MORRIS ROSENHEIM *et al.*, Respondents, *v.* THE AMERICA INSURANCE COMPANY, Appellant.

*Evidence—Objections.*—Where objections are made at the trial to the admission of evidence, the reasons for the objection must be stated.

*Evidence—Opinion.*—The opinions of witnesses, although experts, are not admissible unless questions of science or skill are involved. In all other cases the facts must be stated for the jury to pass upon their effect.

*Insurance—Concealment.*—It is the duty of the assured, applying for insurance, to state all the facts known to him material to the risk. Whether the facts known to, but not stated by, the assured were material to the risk, is a question of fact for the jury.

*Insurance—Seaworthiness.*—The question whether or not a vessel was seaworthy at the time of issuing the policy, is a question of fact to be submitted to the jury; if the facts are admitted or found by the jury, the court will then pass upon it as a question of law.

*Appeal from St. Louis Court of Common Pleas.*

The facts are sufficiently stated in the opinion of the court. The instructions given and refused were as follows:

By the court, of its own motion:

" The court instructs the jury that, if the grounding of the steamer Belfast was a fact that would have tended to influence the defendant's estimate of the character and degree of the risk it was about to assume; that is, if it was a fact the knowledge of which would naturally and directly have tended either to prevent the defendant from taking the risk, or to induce it to charge a higher rate of premium for taking it, then the fact of the steamer grounding was material to the risk; and if it was known to either of the plaintiffs at the time of their application for insurance on the goods in question, and not

known to the defendant, then it was the duty of the plaintiffs, at the time they made their said application, to communicate the fact to the defendant or its agent, and if they failed to do so they cannot recover in this suit.  If, however, the fact of the steamer grounding was not material to the risk, as above explained, the plaintiffs might without prejudice to their rights remain silent about it, although it was unknown to the defendant, unless perchance they acted in bad faith; for, if they remained silent or failed to communicate the fact to the defendant with the intent to commit a fraud on the defendant, their insurance is void, whether the fact was material or not.  The burthen of proving the facts that will avoid the plaintiffs' insurance, according to the foregoing instructions, rests upon the defendant.

" The jury will disregard the testimony given by Captain Smith concerning the capacity and experience of Captain Bowen and the mate, Alexander Gower, and will consider the case in the same way as if Captain Smith had not testified on that subject."

Defendant's instructions given :

" If the jury believe from the evidence that at the time of the application for insurance on the goods, the boat on which the goods were being transported was at the time in an unsound or unseaworthy condition, and so known to be to plaintiffs, or either of them, then the plaintiffs cannot recover in this action.

" If the jury believe from the evidence that at the time of the application for insurance on the goods, the boat on which the goods were being transported was in an unsound or unseaworthy condition, then the plaintiffs cannot recover."

Defendant's instructions refused :

" If the jury believe from the evidence that at the time of the application for insurance on the goods, a portion of the cargo had been thrown overboard and jettisoned, and that such throwing over was known to the plaintiffs, or either of them, then they will find for the defendant.

" If the jury believe from the evidence that at the time of

the application for insurance on the goods, the said goods were damaged by a peril of the river already incurred, or in immediate danger of damage from such peril incurred, or that the boat on which such goods were in course of transportation was then unsound or unseaworthy, and so known to be to plaintiffs, or either of them, then the plaintiffs cannot recover."

*Krum* and *Harding*, for appellant.

I. The theory upon which the court placed the case before the jury is erroneous. The court left it for the jury to determine whether or not the stranding of the Belfast, the jettison of a part of her cargo, the falling of the river, and the ineffectual attempts made to relieve the boat during the time plaintiff Collins remained on her after her stranding, were facts material to be communicated to the company.

We maintain that the facts were necessarily material, and that the court should have instructed the jury, that if they believed those to be the facts from the evidence, the plaintiff could not recover. We are aware that, generally, it is proper to leave the question of the materiality of facts concealed, and the question of seaworthiness, to the jury; but whenever, from the nature of the facts, it is apparent that they must be material, the court should act upon the hypothesis that they are. In Burritt v. Saratoga Insurance Co., 5 Hill, 188, the court (p. 192) seems to recognize this doctrine.

Unseaworthiness is presumed as a matter of law under certain circumstances. (2 Johns. 124; 3 Johns. Ca. 76; 2 Bay, 503; 2 McCord, 336; 20 Ohio, 211.)

So the courts have declared that intelligence of a certain class received by the assured in time to have been communicated to the insurer before the issuing of the policy, should have been made known to the latter, and that a failure to do so avoided the policy. (2 Caines, 224, and same case, 1 J. R. 150; Harper, 235; 26 Penn. State Rep., 2 Casey, 192; 1 W. Black, 463.)

Rosenheim v. America Insurance Co.

II. The court below erred in its admission and exclusion of testimony.

*F. C. Sharp* and *Wm. N. Grover,* for respondents.

I. The objection made by defendants to portions of the depositions of Wood and Church were general objections, without any specific statement of the grounds of objections. The overruling of general objections will not be reviewed in this court. (Field v. Hunter, 8 Mo. 131; Frost v. Prior, 7 Mo. 316; Dickey v. Malachi, 6 Mo. 186; Dozier v. Jermain, 30 Mo. 220.)

II. The testimony excluded, on motion of plaintiff, was excluded for good and sufficient reasons appearing upon the record, because of the leading character of the questions or of the incompetency or irrelevancy of the answers.

Persons of skill are allowed to give their opinions in evidence only in cases where, from the nature of the subject, facts disconnected from such opinions cannot be so presented to a jury as to enable them to pass upon the question with the requisite knowledge and judgment. (1 Greenl. Ev. § 441, and note 4; Jefferson Ins. Co. v. Cotheal, 7 Wend. 72; Campbell v. Rickard, 5 Barn. & Ad. 840; Westbury v. Aberdeen, 2 Mees. & Wel. 267; Rawlings v. Desbrough, 2 Moody & Rol. 329.)

III. Whether or not the grounding of the Belfast at the time of the insurance was a material fact, was a question for the jury. The question was properly presented to the jury and passed upon. (See authorities cited above.)

DRYDEN, Judge, delivered the opinion of the court.

This was an action on a marine policy of insurance. By the terms of the contract the defendant [appellant] was to insure the goods of the plaintiffs, shipped, or to be shipped, from New Orleans to St. Louis on good steamboats, the shipments being reported to the defendant and endorsed on the policy. The defendant relied upon two grounds of defence:

1. That, at the time of application for the insurance, the

plaintiffs concealed from the defendant facts material to the risk; and,

2. That at the time of the application the steamboat on which the shipment was made was unseaworthy.

A trial was had, resulting in a verdict and judgment for the plaintiffs, and the Common Pleas refusing to set the verdict aside, the defendant has appealed to this court. The evidence on the trial disclosed the following facts:

On the 13th of March, 1857, Collins, one of the plaintiffs, shipped, at the port of New Orleans, on the steamer Belfast, bound for Memphis, a stock of goods of the plaintiffs, destined for St. Louis. On the same day the Belfast set out on her voyage, Collins being a passenger.

On the 17th of March, one hundred and fifty miles below Memphis, the boat ran aground; and still remaining so on the 18th, Collins and most of the other passengers took passage on the Kennett for Memphis, where they arrived on the 19th, when Collins sent the following telegram to his partner in St. Louis:

"Memphis, March 19, 1857.—To Rosenheim & Collins: Insure seven thousand dollars from New Orleans to Memphis. Martin Collins."

The dispatch was received by Rosenheim the same day, and he immediately went to the office of the defendant and had the following endorsement made on the policy, viz:

"March 19th.—From New Orleans to Memphis. Mdze.—amount $7,000. Rate ½—premium $35."

So far as appears from the evidence, both Rosenheim and the defendant were ignorant of the grounding of the boat.

Before Collins left, the officers of the Belfast caused a part of the cargo—railroad iron, not being the property of the plaintiffs—to be thrown overboard. Collins knew this fact. At the time the boat grounded the river was falling rapidly. A day or two after the Kennett passed up, the Belfast, still aground, was discovered leaking. Afterwards that part of her cargo not lost was reshipped and the boat became a

wreck.    The plaintiffs' goods became damaged, resulting from the grounding of the Belfast.

In the depositions of the captain, clerk and mate of the Belfast, read by the plaintiffs, they severally stated that at the time the Kennett left no damage to the Belfast or her cargo was *apprehended* by either the officers or crew.    To these statements the defendant objected, but the objection was overruled and exception was taken.

The defendant then offered to read from the deposition of Captain Bowen, of the Kennett, an experienced river man, so much of it as expressed the opinion of the witness as to the degree of danger the Belfast was in when passed by the Kennett on the 18th.    The plaintiffs objected to the competency of the evidence, and the objection was sustained, and the defendant excepted.

The court, of its own motion, instructed the jury on the question of the concealment of material facts, and, on motion of the defendant, gave two instructions on the question of unseaworthiness, but refused two other instructions asked by the defendant, and the defendant excepted.

The questions presented by the record for our consideration concern the admission and rejection of testimony and the giving and refusal of instructions.

1. As to the testimony objected to of the officers of the Belfast: The objection urged in this court for its rejection is, that the evidence is not the statement of any fact, but the expression of the *opinion* of the witnesses, and therefore incompetent.    Neither this nor any other specific ground of objection was stated at the trial, and we will therefore not stop to inquire whether the evidence is subject to the objection or not.    When a party seriously objects to the evidence offered by his adversary, common fairness requires him to disclose the ground for its exclusion at the time it is offered, and if he fail to do so he cannot complain that the disclosure in the appellate court will be unavailing.

2. As to the testimony of Captain Bowen, which was excluded:   The defendant endeavored to show that the Belfast,

at the time Collins left her, was in imminent danger of break-
ing in two, and becoming, with her cargo, a total loss, and for
this purpose, instead of laying before the jury the facts from
which they could find the existence of such peril, the defend-
ant sought to establish it by the opinion of a witness of ex-
perience in the navigation of the river.

It does not appear that any question of science or skill was
involved in the case; no question which a jury of practical
men could not solve by a view of the facts themselves, un-
aided by the opinions of experts. The evidence was, there-
fore, incompetent and properly rejected.

3. It is the duty of the assured, when he makes applica-
tion for insurance, to disclose to the underwriter every fact
within his knowledge, which, if known to the insurer, would
naturally cause the latter either to charge a higher rate of
premium or to refuse the risk altogether; and if he fail to
make such disclosure, it will avoid the policy.

In every case, the question whether the fact concealed is
such as would thus influence the conduct of the underwriter,
if known to him, is a question for the jury, and not for the
court, to determine. In the case under consideration, the
defendant insists the grounding of the vessel was a material
fact known to the plaintiffs and not known to the defendant.
That the fact was known to the plaintiffs and unknown to the
defendant was scarcely controverted; but its materiality—
that is, whether, if the grounding had been known to the de-
fendant, it would have caused it to decline the risk, or to
charge a higher rate of premium—was contested. The court,
in the instruction given of its own motion to the jury, ex-
pressed the law, as applicable to this branch of the defence,
with great precision and clearness; and the jury having
found the issue for the plaintiffs, we have no sufficient war-
rant for disturbing the finding.

4. In every contract of marine insurance it is said there is
an implied warranty, on the part of the assured, of the sea-
worthiness, at the time of the risk, of the vessel insured, or

on which the thing insured is to be transported, which, if broken, avoids the policy.

It was argued at the bar with great force by the learned counsel of the defendant, that, at the time the insurance was effected in this case, the boat upon which the goods were being transported being hard aground and powerless to relieve herself by any means at her command, she was unseaworthy, and that it was the duty of the court to declare her unseaworthy as a matter of law. It may be true, as argued, that if the vessel was in the condition supposed, she was unseaworthy, and that if the facts were agreed or so found, the court would, as a matter of law, declare her unseaworthy; but it seems to have been forgotten that the very question in dispute was as to the condition of the boat, a question of fact which must, in the nature of things, be settled before the judgment of the law can be pronounced. Unseaworthiness, like the materiality of a fact concealed, is a question of fact for the jury. The two instructions given to the jury at the instance of the defendant, sustain this view, and in this respect are tenable. They are, however, both objectionable in omitting to inform the jury what facts would constitute unseaworthiness; but, as they were given as asked by the defendant, (and of course no exception,) and as the defect was to the prejudice of the plaintiffs and not the defendant, there is no ground of complaint.

The court properly refused the two remaining instructions asked by the defendant. The first assumes that the throwing overboard of a part of the cargo, if known to the plaintiffs, would avoid the policy without regard to the question whether the vessel or cargo was in danger, or whether the jettisoning was successful, or whether the defendant had notice. The second was no better. Both were manifestly wrong.

Let the judgment of the court below be affirmed; the other judges concur.