## KNAPP vs. SCHNEIDER.

*Cross-examination. — Evidence.*

1. *Quære,* whether the general rule that cross-examination must be confined to matters inquired into in the direct examination should be applied where the witness is a party to the suit, testifying in his own behalf.

2. The objection that certain evidence cannot be called for in *cross*-examination must be taken *on that ground;* and a mere *general* objection is not sufficient.

3. In replevin for property seized by defendant as sheriff on an execution against plaintiff's father, it appearing from plaintiff's evidence that he *purchased from a third party* and not from his father, evidence for the defense that the father listed the property for taxation as his own was inadmissible (the plaintiff's knowledge and consent to such listing not being shown), though accompanied by proof that the plaintiff did not list the same for taxation, and that it was kept in the father's house, where plaintiff also lived.

APPEAL from the Circuit Court for *Racine* County.

Replevin by *Albert M. Knapp,* for a piano alleged to be his property, which defendant, as sheriff, seized on an execution against the property of Horace Knapp, plaintiff's father. The defendant appealed from a judgment in plaintiff's favor. The errors alleged will sufficiently appear from the opinion.

*Paine & Millet,* for appellant, to the point that the court erred in admitting the questions objected to on cross-examination, cited 1 Greenl. Ev. § 447; *Congar v. Ch. & G. U. R. R. Co.,* 17 Wis. 483; to the point

that the evidence in regard to the listing of the property for taxation was improperly admitted, *Haingan v. Wright*, 4 Allen, 514; *McGough v. Wellington*, id. 502; *Donaldson v. Johnson*, 2 Chand. 160; *M. & M. R. R. Co. v. Finney*, 10 Wis. 388.

*Bennet & Ullman*, for respondent.

PAINE, J. This was an action to recover a piano which the defendant, as sheriff, had seized on an execution against the plaintiff's father. The question was as to its ownership. That question was submitted to the jury on proper instructions, and they found against the plaintiff.

The verdict must stand, unless some of the exceptions taken by the plaintiff to the admission of evidence on the trial are valid.

The first exception was to the overruling of an objection to questions put to the plaintiff on cross-examination. It is said that these questions, the object of which was to show the fraudulent intent of the plaintiff's father in transferring his property, and knowledge of that fact by the plaintiff, related solely to the defense, and not to any thing about which the plaintiff had testified on his examination in chief. The rule is, that cross-examination is to be confined to the matters about which the witness was examined in chief, subject to the latitude allowed for the purpose of testing his intelligence, memory, credibility and fairness. And neither party should be allowed, in cross-examining his adversary's witness, to go beyond this limit, and introduce independent matters tending to establish his own side of the case. The principal reason of this is, that, inasmuch as parties are frequently compelled to call an adverse or unwilling witness to prove a particular fact, it would give the opposite party an unjust advantage to allow him, under the guise of cross-examination, to extract from a witness favorable to him, by leading questions,

evidence of independent facts tending to support his side of the case, and about which he had not been questioned at all by the party calling him. But this reason would seem to fail entirely where the question relates to the examination of a party to the suit. For it can never be assumed of him that his feelings might be more favorable to his adversary than to himself, nor that the subtle and suggestive influence of leading questions could extract any more from him against himself than the truth required.

It is very doubtful, therefore, whether a departure in such a case from the ordinary rule of cross-examination would be sufficient, even though the objection were made upon that ground, to reverse a judgment.

But to make such an objection available in any case, it should be made specifically upon the ground that the evidence was not proper cross-examination. A general objection goes to the competency of the evidence, and not to the mere order of time in which it is to be introduced. Where the objection relates to the latter point, the attention of the court and the opposite party should be called to it by a specific objection for that reason, so that it may be obviated. *Rosenheim et al. v. Insurance Co.*, 33 Mo. 230; *Whiteside v. Jackson*, 1 Wend. 418, 421; *Waters v. Gilbert*, 2 Cush. 27, 31; *Martin v. Travers*, 12 Cal. 243; *Leet v. Wilson*, 24 id. 399; *Buntain v. Bailey*, 27 Ill. 409; *Bonner v. Home Ins. Co.*, 13 Wis. 686. As only a general objection was made here, it was not sufficient to raise the question whether the evidence was strictly proper as cross-examination.

It appeared from the plaintiff's testimony, that a part of the consideration for this piano was another which he claimed to own, and which was exchanged in part payment for this. He claimed to have bought the first piano from the dealers in Chicago, paying partly by a melodeon which he had previously bought of his father. He admits that his father acted in the purchase of both

pianos, but claims that he acted for him, and that the amount of the consideration advanced by his father was charged on the plaintiff's salary, he being then working for his father upon a salary.

The defendant was then allowed, against the plaintiff's objection, to prove that in 1864 the father returned a piano in the list of his taxable property. In the same connection, the defendant proved that the plaintiff did not list the piano for taxation himself; and the object of it all was to raise an inference that the father owned the first one, instead of the son, and that, therefore, the piano in question was paid for, to that extent at least, by the father's property. I was at first inclined to think that this evidence was admissible under the exception to the general rule, which allows the acts of ownership, and statements by a vendor remaining in possession, explanatory of his possession, to be given in evidence, even against his vendee. This exception is recognized in *Grant v. Lewis*, 14 Wis. 489, and in other cases.

But here, according to the plaintiff's statements, he did not purchase either piano of his father. The latter acted merely as his agent in negotiating the purchases. It cannot therefore be treated as a case where the relation of vendor and purchaser between the father and son was conceded. And if not, I do not know of any rule by which the fact that the father listed the piano for taxation was admissible against the plaintiff, without something to show knowledge or consent on his part. The listing was no more than a statement or claim of ownership. And it will not be contended that any man's title can be divested by evidence that another had claimed his property.

Nor can I see that this evidence is made admissible by following it with proof that the plaintiff did not list the piano. The latter circumstance might go for what it was worth. Its force would perhaps depend some-

what on the fact whether he was called on by the assessor to return a list or not. But even if he was called on, and neglected to do so, that fact would not seem to work any such change in the rules of evidence as to permit proof that a third party had claimed his property. The whole transaction may have been a fraudulent scheme to keep the father's property from the reach of his creditors. But, if so, it must be proved by evidence that would be competent if the transaction had been between parties in no wise related. Undoubtedly the close relationship existing between these parties, and the facts that the son lived with his father's family, and that these pianos were kept in his father's house, and used by all of the family who desired to use them, were circumstances proper to be considered by the jury, and might have a very material influence in the interpretation of other evidence tending to show fraudulent collusion. But they can have no effect to change the rule as to the nature of the evidence requisite to prove or disprove title. If the plaintiff had been boarding with a stranger, and claimed title to a piano which he kept at his boarding house, it would not be contended that his title could be disproved by showing that such stranger had listed the property for taxation without connecting the plaintiff in some way with the act. The fact that his father listed it is equally incompetent.

For the admission of this evidence the judgment must be reversed and a *venire de novo* awarded.

*By the Court.* — Ordered accordingly.