Weadock vs. Kennedy.

W<small>EADOCK</small>, Executor, Respondent, vs. K<small>ENNEDY</small>, Appellant.

*October 21 — November 17, 1891.*

*Fraudulent conveyances: Court and jury: Evidence: Examination of witnesses: Jurors: Conduct of attorneys.*

1. The question of *intent* to defraud creditors in a conveyance by a debtor of his property is peculiarly one for the jury, and a verdict sustaining the conveyance should not be disturbed unless the evidence very clearly establishes the fraud.

2. Considerable latitude should be allowed in the examination of witnesses while testifying to particular facts and circumstances tending to show fraud, and the court should not be technical or illiberal in sustaining objections.

3. Objections to questions as not being proper cross-examination, or as being leading, should be made specifically on those grounds.

4. The value of property included in a conveyance alleged to be fraudulent is a material subject of inquiry.

5. The question being whether or not a bill of sale to the plaintiff was fraudulent, and he having testified in his own behalf, the defendant should be allowed to cross-examine him fully on the whole case.

6. The attorney of the plaintiff's vendor, who had testified on behalf of the plaintiff to the execution of the bill of sale, might properly be asked on cross-examination what the consideration of the bill of sale was.

7. A witness for the defendant testified that, a few days after the execution of the bill of sale and a few days before the property was attached by a creditor, he asked the plaintiff's vendor what was up and how the thing stood, to which he replied: "They are trying to beat me out. But be quiet! I am going to see who is going to come out ahead." *Held*, that the defendant should have been allowed to ask the witness, "Be quiet about what?"

8. Plaintiff's attorneys, being on opposite sides of a case called for trial just before this case, by agreement struck from the panel in that case certain three jurors on each side, so that the six jurors so stricken should be called in this case. Defendant in this case peremptorily challenged three of said jurors, but the other three sat in the case. *Held*, that it was not error to deny a new trial on that ground, it not appearing that such jurors were partial or unfair or that the defendant was in any way injured.

APPEAL from the Circuit Court for *Douglas* County.

Replevin.   The facts are sufficiently stated in the opinion. The defendant appeals from a judgment in favor of the plaintiff.

For the appellant there was a brief by *John Brennan* and *McIntosh & Bishop*, and oral argument by *Mr. Brennan*.

For the respondent there was a brief by *Ross, Dwyer & Smith* and *Champ Green*, and oral argument by *C. Smith*.

ORTON, J.   After the judgment was rendered in this action the plaintiff, E. V. Mundy, died, and the above plaintiff was appointed executor.   I shall speak of the said Mundy as plaintiff.

On the 22d day of November, 1888, the defendant, as sheriff, levied a writ of attachment issued in the suit of J. McCann as plaintiff, against John McGee as defendant, upon the property described in the complaint in this action, of the value of about $1,800, as the property of said McGee.   In said attachment action judgment was afterwards rendered for $4,338.42.   The plaintiff brought this action in replevin to obtain the possession of said property, and claimed the ownership thereof by virtue of a bill of sale executed by the said John McGee and wife to him on the 7th day of November, 1888, and of a bill of sale executed by the said John McGee to one Kennedy on the 9th day of the month and year last aforesaid, and assigned to him by the said Kennedy.   The consideration expressed in both bills of sale was the sum of $3,000, and each of them conveyed all the property of the said John McGee, except that which was by law exempt.   The property attached, and for which this action is brought, is only a part of the property embraced in said bills of sale.   The defendant in his answer justified the taking by said writ of attachment, and alleged that when the property was so attached it be-

longed to the said John McGee, and that prior to the issuing of the attachment the said John McGee had assigned, conveyed, and disposed of part of his property with intent to defraud his creditors.

It was apparent from the answer that the defense of the action was to be predicated upon the fraudulent character of the said bills of sale or other conveyances of the said McGee, so that the court and the counsel of the plaintiff were apprised beforehand of the object of the testimony sought at any time to be introduced by the defendant. The jury rendered a verdict for the plaintiff, and found the value of the property to be $1,891.80.

On the merits of the case we may be permitted to say that the testimony tended strongly to show that said McGee was insolvent to the knowledge of the plaintiff when he executed said bills of sale; that they conveyed all of his property; and that they were fraudulent as to his creditors. But we do not feel warranted to reverse the judgment on the ground that the verdict is not sustained by the evidence, for the question of *intent* to defraud in such a case is one of fact, and peculiarly within the province of the jury to decide, and their verdict ought not to be disturbed unless the evidence *very clearly* establishes the fraud.

There was, however, besides the special exceptions, but in connection with them, one general and glaring error of the court often repeated in the trial, for which the judgment ought to be reversed and a new trial had in the case. That was the unreasonable limiting, curtailing, and restricting the examination of witnesses while testifying to particular facts and circumstances tending to show the fraud. Fraud, as a question of fact, depends generally upon circumstantial evidence alone, and on a great variety of minor facts, and the court should not be technical or illiberal in sustaining objections to questions having the least bearing upon the issue. If there is any doubt about their materi-

ality, they ought to be answered, rather than rejected as immaterial. If the questions are immaterial, they injure no one. To reject seemingly doubtful questions, in such a case, might sometimes result in great injustice by shutting out important facts. This error in the examination of the witnesses will appear as we dispose of the exceptions to the ruling of the court in sustaining objections to the testimony.

1. The witness Detting had been examined on behalf of the plaintiff in relation to the ownership of the property on the 9th day of November, 1888, and as to what the property consisted of. The plaintiff, on receiving it from McGee, employed the witness to keep and take care of it, and he appeared to know very much about the facts of the sale. He was asked on cross-examination: " Do you know what the value of the property included in the bill of sale was? " This question was objected to by the plaintiff's counsel, on the ground of its being *improper*, and the objection was sustained. The question was clearly not an improper one in the case, and was material and relevant to the question of fraud. It was not objected to on the ground of not being proper cross-examination. That objection must be taken specially, or will be disregarded. *Knapp v. Schneider*, 24 Wis. 70.

2. E. V. Mundy, the plaintiff, after being examined as a witness in his own behalf, was asked by the defendant's counsel, on cross-examination, " What went to make up the rest of the three thousand dollars? " The plaintiff's counsel objected to the question as improper, immaterial, and not proper cross-examination, and the objection was sustained. The plaintiff had been examined by his counsel as to the date of his taking possession of the building in which much of the property was situated, and as to his ownership of the building included in the bill of sale, and had stated, on cross-examination, that McGee's interest in the building was part of the consideration of the $3,000. The

question was certainly proper and material, as affecting the validity of the sale, and it being cross-examination was no proper objection, because he was a party to the suit and to the sale. It has always been the practice to allow a party, as a witness, to be cross-examined fully on the whole case, and not require the adverse party to call him as his own witness, and, in case the issue is the fraud of the party who has made himself the witness, " the court should permit a full and exhaustive examination of him upon all questions which have a bearing upon the question of the good faith of the transaction." *Kalk v. Fielding*, 50 Wis. 339; *Berger v. Clippert*, 53 Mich. 468. The court says in the last case: " It was error for the court to cut short the cross-examination of the witness in this manner. The witness was the party who, defendant claimed, had committed a fraud on his creditors." *Lane v. Starky*, 15 Neb. 285; *Craig v. Fowler*, 59 Iowa, 200. In the last case the court said: " The court below ought to have given larger *latitude* to the examination of the plaintiff and other witnesses." The question put to the plaintiff, " Who owned the shop?" was improperly rejected on the same grounds, after the court had asked the witness whether his counsel had inquired of him about the ownership of the shop.

3. The witness Ross was one of the attorneys of McGee, witnessed the bill of sale, and it was drawn in his office, and delivered to Mundy in his presence, as he had testified on behalf of the plaintiff. He was asked by defendant's counsel: " What was the consideration of the bill of sale? Do you know what the consideration for this bill of sale was?" The objection that these questions were not proper cross-examination was sustained by the court. The attorney comes reasonably within the rule of the party in respect to cross-examination. He had testified about the bill of sale, and it would appear to be *strictly* proper, as cross-examination, to ask him what the consideration was which was a part of the bill of sale.

4. The witness Hunter had testified, in behalf of the defendant, that McGee, about the 9th day of November, 1888, offered to sell his property to him, and he was asked: "Did or did not his offer include his personal property generally?" The general objection of the counsel of the plaintiff to this question was sustained. The only objection which can be thought of is that it was leading, and that objection must be special. *Teegarden v. Caledonia*, 50 Wis. 292.

5. The witness Nyquist, on behalf of the defendant, was asked by his counsel: "Do you know what the value of that machinery was at the time?" The objection that it was immaterial was sustained. The court gave as a reason that "it was not involved in the case." The machinery was in the bill of sale, and its value was therefore a material subject of inquiry on the question of fraud.

6. This same witness testified that about the 13th day of November, 1888, he asked John McGee: "What was up, and how this thing — the work — stands, and if he was going on." He told him it was something. "They are trying to beat me out. But be quiet! I am going to see who is going to come out ahead." The witness was then asked by defendant's counsel: "Be quiet about what?" The general objection to this question by the plaintiff's counsel was sustained. The answer to this question might have been, "Be quiet about *this sale*," and tend to show *secrecy* of the transaction as a badge of fraud on the part of the vendor, McGee. The question was material and proper.

7. One of the grounds of the motion for a new trial in the case was that the attorneys, Messrs. Ross & Dwyer and Champ Green, Esq., who appeared for the plaintiff in this case, were on opposite sides of a case on the calendar called for trial next before this case, and it was agreed between them that they should strike from the panel certain three jurors on each side, so as to have such six jurymen

called in this case, and this was done according to said agreement. Three of said jurors were challenged peremptorily by the defendant in this case, and the other three were jurors in the case. These facts appear in certain affidavits, and are virtually admitted by said attorneys. It is contended by the learned counsel of the appellant that it was error for the court to deny the motion for a new trial on that ground. Such a practice, as one of the "tricks of the trade," may indicate ingenuity and far-seeing sagacity, and might not be approved by the ethics of the bar. But it does not appear that the defendant suffered any injury from it. These jurors were presumably and probably good and lawful men of the county, and competent, and, so far as known, discharged their duties as jurors fairly and impartially. It was not shown that they knew of this professional or unprofessional agreement, and consequently they were not affected by it. It does not appear that the plaintiff obtained any advantage, or that the defendant suffered any injury, by it. It was not, therefore, a material error for the court to deny the motion for a new trial, so far as that ground was concerned.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.