# CASES

## ARGUED AND DETERMINED

### IN THE

# Supreme Court of South Dakota

---

## MERRILL v. MINNEAPOLIS & ST. L. RY. CO.

The verdict finally determines questions upon which the evidence conflicts, or such as to which reasonable minds might fairly draw different conclusions.

The jury could, as a matter of common knowledge, consider that one walking at an ordinarily rapid gait will travel about four miles an hour.

In an action against a railroad company for injuries sustained at a street crossing, evidence **held** to sustain a finding that no bell or whistle was sounded on approaching the crossing.

In an action against a railroad company for personal injuries sustained at a street crossing, evidence **held** to sustain a finding that the train was running at a much higher speed than that permitted by ordinance at the time of the accident.

A railroad company's failure to sound the bell and whistle at a street crosing, as well as the operation of a train on approaching it at a much higher rate of speed than that permitted by ordinance, would constitute negligence.

It was the duty of a pedestrian crossing a railroad track at a public street crossing, which was crossed by several tracks, to stop and carefully look and listen as she approached the track.

In an action against a railroad company for personal injuries sustained at a street crossing, evidence **held** to sustain a finding of negligence by defendant in operating the train on approaching the crossing.

In an action against a railroad company for personal injuries sustained at a street crossing, evidence **held** to sustain a finding that plaintiff was not guilty of contributory negligence.

Railroad companies are required to exercise greater care at a street crossed by a number of tracks than at one crossed by but one track.

Where a crossing accident occurred in the evening, shortly before sundown, when the sun shone brightly, so that plaintiff's eyes

were dazzled by the sun and she could not see by the ordinary use of her eyes, that fact might be considered in determining whther she was negligent, as well as the fact that the sun shone towards her, so as to prevent her from seeing the train before going on the track.

Where a specific objection to the admission of evidence could have been made, a general objection thereto is not sufficient on appeal to raise the question of its propriety, especially if the objection could have been obviated had a specific objection been made, so that where an ordinance book was irrelevant, in an action for personal injuries at a street crossing, only on the ground that the complaint was not sufficient to permit the admission of such evidence, defendant should have specifically stated that objection, so as to have permitted plaintiff to obviate it by amendment which could have been made, and where only a general objection to its admission was made at trial, defendant cannot first urge the specific objection on appeal.

In an action against a railroad company for personal injuries at a street crossing, the complaint alleged that defendant negligently caused its locomotive to approach the crossing and pass rapidly over the track, and carelessly and negligently failed to ring the bell or sound the whistle on approaching the crossing, and carelessly and negligently failed to keep a lookout on approaching, whereby plaintiff was unaware of its approach. **Held,** that since the general allegations of negligence were not subject to a general demurrer, if defendant desired to have the specific acts of negligence alleged, it should have moved to make the complaint more definite or objected to the admission of the testimony thereunder on the ground that the complaint was not sufficiently definite, and, not having done so, any defect in the complaint for failure to allege specific acts of negligence was cured by the verdict for plaintiff; the parties having introduced counterevidence on the question of negligence.

(Opinion filed December 28, 1910.)

Appeal from Circuit Court, Codington County. Hon. GEORGE H. MARQUIS, Judge.

Action by Helen S. Merrill against the Minneapolis & St. Louis Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

See, also, 25 S. D. 527, 127 N. W. 846.

*Case & Shurtleff, W. H. Bremmer,* and *George W. Seevers,* for appellant. *Sherin & Sherin,* for respondent.

McCOY, J. This suit was commenced by the plaintiff, who is respondent in this court, against the defendant, the appellant, to recover damages on account of an alleged injury to plaintiff's person by being struck by one of defendant's locomotive engines, at a street crossing in the city of Watertown, on the 7th day of July, 1908. Plaintiff alleged that defendant carelessly and negli-

gently omitted its duty while approaching the said crossing, and gave no signal by ringing the bell or sounding the steam whistle, and carelessly and negligently omitted its duty in failing to keep lookout while approaching and crossing said street, and that by reason of such negligence the defendant's locomotive struck plaintiff while she was crossing said street, throwing her high up in the air and violently upon the ground with such force as to severely and permanently injure plaintiff, without any fault on her part, to her damage in the sum of $4,000. Defendant admitted that plaintiff came in contact with one of its engines while being operated over and across said street, and denied any negligence in reference thereto on the part of defendant or its employees, and affirmatively alleged that all the injuries, if any, sustained by plaintiff were caused by and resulted from her failure to exercise due, proper, and ordinary care for her own safety, and that the negligence of plaintiff contributed to cause the accident and injuries alleged and complained of by plaintiff. The trial resulted in a verdict and judgment in favor of plaintiff in the sum of $2,000. Defendant has brought the cause to this court on appeal, assigning various errors and also assigning the insufficiency of the evidence to sustain said verdict.

The principal question for consideration is, whether the evidence was sufficient to sustain the verdict. At the close of plaintiff's testimony and again at the close of all the evidence, defendant moved the court for a directed verdict, on the ground of the insufficiency of the evidence, and also again raised the same question by motion for new trial. Appellant contends that the evidence fails to show any negligence on its part, and fails to show that defendant's engineer in charge of said engine was not using reasonable diligence to avoid any and all accidents at said crossing. Appellant also contends that the undisputed evidence shows that the engine was not running to exceed five or six miles an hour, when it crossed over said crossing. All disputed questions of fact have been resolved in favor of plaintiff by the verdict of the jury; and also all points at issue in the evidence, about which different reasonable minds might fairly and reasonably draw different conclusions, were also resolved in favor of plaintiff by the verdict of the jury. One of the material points at issue on the trial was whether or not the bell or whistle were sounded while said engine was approaching said crossing. On this point there was a conflict in the evidence. Plaintiff and a number of witnesses who were in a position to hear testified that they heard neither bell nor whistle; while a number of witnesses, on the part

of defendant, testified that the bell and whistle were sounded. This conflict in the testimony was settled by the verdict of the jury in favor of plaintiff. Another point at issue on the trial was the question of the speed of the engine at the time of and immediately prior to the happening of the accident. The ordinance of the city of Watertown provided that such locomotives should not run over and across streets at a greater speed than six miles an hour. The engineer and fireman operating the said engine testified that said engine was running at the time of the said accident five or six miles an hour; and, while there were no other witnesses who undertook to assert the rate of speed of said engine at said time, still, respondent contends that the surrounding facts and circumstances show the engine was traveling at a much higher rate of speed. The incidents surrounding and culminating in an accident of this character are of such short duration and succeed each other with such rapidity that it necessitates a close analysis of the testimony in order to arrive at a proper conclusion as to the effect thereof. The following plat will serve to show the surrounding locality to some extent:

From the record it appears that plaintiff was on her way from her place of residence, on the north side of defendant's tracks, going south to join her husband uptown, that her course

or travel was on the east side of Box Elder street going directly south, that the tracks of defendant, one switching and one main track, lay over and across Box Elder street at an angle of about 45 degrees in a northwesterly and southeasterly direction, and that plaintiff was obliged to cross these tracks on her way from her residence to the place uptown where she expected to join her husband. The record shows that she approached the switching track of defendant at a rapid walk. She testified that when she came to the first track, the switching track, 46 feet north of the main track, she stopped and listened and looked each way, up and down the track, and did not see or hear said engine, and that after she had crossed the switching track and before reaching the main track, she again looked and listened up and down the main track and saw no engine and did not hear the bell or whistle of said engine. As she stepped on the main track she was struck by the engine, which came from the northwest. She testified that she was thrown high in the air, so that she could see into the cab as the engine rushed by her. Other witnesses saw her high in the air, falling through the air, some five or six feet high, with her head lowermost and her arms extended. Witness Bowers, for the defendant, standing on the sidewalk south of defendant's main track, who had the best possible opportunity to observe her at the moment of contact with the engine, said: "It appeared to me that she was struck by the crossbeam running across the cowcatcher. I could see over the cowcatcher. It seemed to me that she was struck full in the breast and throwed—it seemed as though—clear off to one side." Another witness testified that his attention was called to her when she was falling, up in the air five or six feet high, and that he started middling fast to go toward her, that he thus traveled 50 yards while the engine went 150 yards. This was at a time when the engine was slacking its speed. This witness also testified that he saw plaintiff approaching near the tracks, that he was on the north side of the switching track 170 yards east of the crossing where the accident occurred, that a building was directly west of him and that he could not see her until she approached near the switching track, that he could see

up the main track to the northwest of the street crossing at the time he first saw plaintiff, and that he did not see an engine in that direction at that time, that immediately before the accident his attention was called to other matters and he did not see or hear the engine approach and strike plaintiff, but first saw her after she had been struck and while she was going through the air on the north side of the engine. The testimony also shows that she struck the ground about eight feet north of the main track and from 40 to 60 feet east of the sidewalk where she had been struck by the engine.

The fact that she was thrown 40 to 60 feet by collision with this engine; the fact that while witness Henry walked 50 yards at a rapid gait the engine went 150 yards; and that, too, when the engine was slowing down its speed after the accident; the fact that plaintiff nor witness Henry did not see or hear the engine immediately prior to plaintiff's stepping upon the switching track—all tend to show that said engine was traveling at a much higher rate of speed than six miles an hour at the time of the accident. As a matter of common knowledge, the jury had the right to take into consideration that a person walking at an ordinarily rapid gait will travel about four miles per hour, and from the facts and circumstances immediately surrounding the happening of this accident, the jury might have fairly and reasonably concluded that said engine was running anywhere between 12 and 25 miles an hour at the time of said accident. If plaintiff was traveling at a rate of four miles an hour after she looked and listened, when she was 46 feet north of the main track, and the engine was only traveling five or six miles per hour, the engine was then at some point between 60 and 70 feet west of her at the time she so looked and listened, and which she could not have helped but see and hear. If the engine was traveling at a much higher rate of speed, it was then not at a point between 60 and 70 feet of her, but was at a much further distance west, and this might account for the fact that she did not see or hear it when she looked and listened, and also might account for the fact that Henry did not see it, because it was then not there to be seen. It

is much more reasonable to conclude that the engine was not there at that time, than it is to conclude that it was and that she saw it, and, at the risk of her life, kept right on walking into it. The jury had the right to take into consideration the reasonableness of the situation. We are therefore of the opinion that there was ample evidence to sustain the contention of plaintiff that no bell or whistle was sounded and that said engine was running at the time of the accident at a much higher rate of speed than permitted by the ordinance, all of which would constitute negligence on the part of defendant.

It is contended by appellant that the undisputed evidence shows that plaintiff was herself negligent, and that her contributory negligence caused the accident. It is not reasonable to infer that plaintiff, at the risk of her life, intentionally and heedlessly walked against this engine, knowing of its presence and proximity to her. The only reasonable negligence that might be attributable to her was in not discovering the approach of this engine in time to protect her person, regardless of negligence on the part of defendant. Again, we must resort to the evidence and surrounding facts and circumstances to discover some reasonable theory to justify the jury in finding that plaintiff was not guilty of contributory negligence. At the time this accident occurred, the sun was low in the west and shining very brightly. Two hundred and ninety-one feet northwest from where the accident occurred are tall grain tanks, around which, on the west side thereof, the main track of defendant curves. Plaintiff, when she was opposite the Wilson residence, 182 feet north from the place of the accident, was in the shade of a mill and these grain tanks, and she testified that she could see clearly between the street crossing and the tanks, and that no engine was in sight at any place between the crossing and tanks at that time. If the engine moved less than six miles an hour when plaintiff was opposite the Wilson residence, the engine would have been within 275 feet of the crossing and plainly visible to her (another circumstance showing that the engine moved at more than six miles an hour). Plaintiff also testified that as she neared the switching track she passed out of

the shade of the tanks and mill, and the rays of the sun struck her full in the face, when she looked westward, and interfered with and obstructed her vision. Her eyesight and hearing were good. There were no defects in either. The law applicable to the care and caution on the part of blind or deaf persons is not applicable to her. The rays of the sun obstructed her view the same as would have a box car, a building, or the darkness. When she stopped, looked, and listened as she approached near the switching track and again after she had crossed the same, the sun's rays reflected on her glasses, obstructing her vision, and she says that she did not see or hear the engine until it was right upon her, too late to protect herself. We do not think plaintiff was required to stop and wait until the sun went down before attempting to cross defendant's tracks, but she was, under such circumstances, required to use all that care and caution which any other ordinarily prudent and cautious person would have done under the same or like circumstances, in an attempt to discover an approaching train at the place in question. It was her plain duty to stop, carefully look, and listen as she approached these tracks. She testified that she did.

The jury, by the verdict, have said that neither the bell nor whistle were sounded, and that the engine was running at a higher rate of speed than six miles an hour. These were safeguard regulations provided by law for the purpose of assisting plaintiff in discovering the whereabouts and approach of this engine, so that she might protect her person from injury. These safeguard regulations were ignored by the servants of defendant. The continuous sounding of the bell might have attracted her attention in time to avert the accident, even if the engine was running at an unlawful rate of speed. Neither the engineer nor fireman saw the accident, or knew thereof, until after its occurrence. If the engine had been running at a lawful speed, the plaintiff would have had a longer time in which to discover its approach and she might have been in a position to back off from or outrun the approaching engine; and, if the speed had been slower, the engineer or fireman might have discovered there was likely to be a

collision in time to have prevented it. If it were an undisputed fact that this engine was running less than six miles an hour and was at some point within 60 or 70 feet of plaintiff at the time when she says she stopped, looked, and listened, immediately before and while she was crossing the switching track, then it would necessarily follow that she either did not look and listen or, having done so, she paid no heed to what she must of necessity have seen and heard. But the facts and circumstances show that this engine might have been running at a much higher rate of speed and was not within 70 feet of her when she looked and listened, but was back near or behind the tanks, at the times when she stopped, looked, and listened, and so far back that the rays of sunshine reflecting on her glasses prevented her from seeing or discovering said engine; and therefore the jury might reasonably have inferred that, although plaintiff used ordinary care and caution, under the circumstances, still she did not discover the approach of this engine in time to avert the accident, and that such accident was due solely to the negligence of the employees of defendant.

Appellant contends that plaintiff kept up her rapid walk until she was knocked off the sidewalk by the engine. It will be observed that in case the engine was moving less than six miles an hour, the more rapidly plaintiff walked the nearer to her was the engine at all the times she looked and listened, as she approached the point of the accident. But plaintiff testified that after she halted, looked, and listened at the switching track, she thereafter proceeded slowly, and it will be here observed that in case the engine was running at a high rate of speed, the slower and more cautiously plaintiff proceeded the further from her was the engine at all the times when she so looked and listened. The slower she walked and the more rapidly the engine ran the greater the distance between plaintiff and the engine, when she was exercising her care and caution to discover approaching danger. The last time, preceding the accident, that plaintiff claims to have looked and listened was about midway between the switching and main track. This would place her from 20 to 25 feet from the point of

the collision. If she moved at a rate of two miles per hour and the engine at the rate of 20, then the engine was from 200 to 250 feet northwest of her, in about the same direction and on about the same level as the shining sun. She was compelled to look directly into the sun. If the engine was traveling at the rate of 25 miles an hour, it would move over 300 feet while plaintiff moved 25, at the rate of 2 miles per hour. Taking into consideration the fact of the sunshine striking plaintiff full in the face when she looked westward, and also that the engine might have been behind the tanks when she looked and listened and for these reasons she did not, by the use of ordinary care, discover the approach of this engine in time to avert the accident, the jury would have been fully warranted in finding that plaintiff was not guilty of contributory negligence, and that the accident was due solely to the unlawful speed of the engine and the failure to sound bell or whistle. This was all within the range of the reasonable probabilities under the evidence before the jury, and concerning which reasonable minds might fairly and reasonably draw different conclusions. Whether the bell or whistle were sounded; whether the engine was running at a lawful or unlawful speed; whether the servants of defendant were negligent or not in the operation of said engine in the approach of said crossing; whether plaintiff in fact stopped, looked, and listened as she approached the tracks of defendant; whether on account of the sunshine and excessive speed of the engine she was prevented from discovering the engine in time to avert the accident; whether she used due and ordinary care and caution under all the circumstances; or whether she was guilty of contributory negligence—were each and all questions for the jury. We are of the opinion that the evidence was sufficient to sustain the verdict on the question that plaintiff was not guilty of contributory negligence.

Appellant excepted to all that part of the instructions given by the court to the jury in which the court instructed the jury that defendant was required to use greater care, where several tracks crossed a street, and that plaintiff might recover if defendant did not use greater care by reason of there being extra tracks

—other tracks than its tracks across this same street. It is now urged that such an instruction was prejudicial error. The instruction actually given by the court was as follows: "A railroad company running and operating a locomotive engine upon the streets of a city must use greater care and diligence to prevent injuries to persons than is required of it in running and operating such engine in less frequented and populous localities, and in certain localities in a city greater precaution may be required of it than in other localities in the same city. For example, in a locality where there are several railway tracks running across a street, greater care may be required of a railway in running its engine across said street, where said several tracks cross, than in running it across a street, where but one track crosses; all other conditions being equal. If you find that defendant was running its engine across a street at a place where, or in the near vicinity of which, four railway tracks other than the one on which the said engine was being run crossed the same street, then the defendant was bound to use such care and caution to prevent injury to a person traveling on foot along said street at or near to said place, as prudent and discreet persons would have used and exercised under like circumstances, and if you find that the plaintiff was struck and injured by defendant's engine at such a place, and that the injury was caused by the negligence of the defendant, or of its agents in charge of the said engine, its or their failure to use such care and caution, and that by the exercise of such care and caution on its part or its said agents the accident causing such injury could have been avoided, the plaintiff is entitled to recover, if you further find that the plaintiff was, at the time of the accident, using due care and caution required of her by these instructions."

It appears from the evidence that there were three other tracks of the Chicago & Northwestern Railway crossing the same street and sidewalk immediately south of defendant's tracks, and that at the time of the accident an engine was working west of the street on one of the Northwestern tracks. It also appears that Box Elder street is one of the principal streets of the city of Watertown, and a section line highway leading from the country

into the city. While the presence of other railway tracks crossing the street in question was not directly in issue, still, such other tracks constituted a part of the surrounding circumstances and would furnish a reason for the exercise of greater care on the part of railway employees in approaching a crossing of that character than would be required in approaching a crossing in some out of the way place in a sparsely populated part of the country. Trains and engines on other tracks, so near by, make noise, ring bells, and blow whistles, all at the same time, and at such a crossing, travelers on the street might have their attention occupied by trains, noises, bells, and whistles on one track, while being approached by an engine and danger on some other track; thus making it necessary to require employees of the railway company, on all occasions when approaching such a crossing, to use a higher degree of care than if there were but one track. Clearly there was no error in the giving of this instruction.

The appellant also excepted to the instructions of the court wherein the court instructed the jury that if plaintiff's eyes were dazzled by the sun so that she could not see by the ordinary use of her sense of sight, that the jury might take that fact into consideration in determining whether or not she was guilty of contributory negligence; that the jury might take into consideration the fact that the sun was shining from the west towards plaintiff in determining whether or not she could see the engine, or whether or not she was guilty of contributory negligence in not seeing the engine before stepping upon defendant's tracks. It appeared from the evidence that this accident occurred in the evening, a very short time before sundown, and at a time when the sun was shining brightly. We are unable to discover any possible error in this instruction.

Section 254 of the compiled ordinances of the city of Watertown, relating to the speed of locomotive engines within the city, was offered in evidence on the part of plaintiff, to which offer appellant made the general objection that it was irrelevant, immaterial, and incompetent and the objection was overruled, and to which ruling appellant excepted and now urges as error. We are

of the opinion that the ruling of the trial court was correct for
several reasons. No specific ground for the objection was stated.
The objection might have related to the sufficiency of the identity
of the ordinance book or the sufficiency of the foundation laid, or
any other kind or character of irrelevancy or immateriality. This
ordinance book was sufficiently identified, after the making of this'
objection, to render the same competent under section 1213, Pol.
Code, and the objection was not renewed, .except on the ground
of incompetency, when the ordinance book was finally offered in
evidence. This ordinance book was irrelevant and immaterial
only on the theory that the complaint was not sufficient to permit
the introduction of testimony of this character. If the appellant
wished to avail itself on appeal of an objection of this character,
the ground of the objection should have been specifically stated,
so that plaintiff's attention would have been called to the defect
in the pleading, if any such existed. If the pleading was not suffi-
cient for this purpose, plaintiff could readily have obviated the
objection by an amendment to the complaint. This has been the
uniform holding of this court in numerous decisions.

In the case of Pitts Agricultural Works v. Young, 6 S. D.
557, 62 N. W. 432, this court reaffirmed the rule laid down by the
Territorial Court in Mining Co. v. Noonan, 3 Dak. 189, 14 N. W.
426, and quotes with approval the opinion of Justice 'Moody: "No
rule of practice is better settled than that where an objection to
evidence could have been obviated upon the trial, if specifically
pointed out, an exception which does not specifically point out
such objection will be unavailing upon appeal. Says Mr. Wait,
in his work on Practice, a text which is supported by all the cases
to which our attention has been called, and denied by none:
'Where a specific objection might have availed, a general objec-
tion will not be sufficient .to raise the point on appeal, especially if
the difficulty might have been obviated if such specific objection
had been made. Where an objection to evidence is so general in
its character as not to indicate the particular ground on which it
is made, the exception will be unavailing, unless the character of
the objection was such that it could not have been obviated on the

trial had it been specifically pointed out. It is well established that the courts do not favor any unfair or secret mode of raising an objection, and therefore any objection which might have been fairly answered, if seasonably made, will be disregarded on appeal, unless specifically taken below.' 3 Wait, Prac. p. 206; 4 Wait, Prac. p. 230; Tooley v. Bacon, 70 N. Y. 37; Levin v. Russell, 42 N. Y. 251; Williams v. Sargeant, 46 N. Y. 481; Belk v. Meagher, 104 U. S. 288, 26 L. Ed. 735; Braly v. Reese, 51 Cal. 447; Manufacturing Co. v. Brown, 9 How. Prac. (N. Y.) 27; Knapp v. Schneider, 24 Wis. 70; Burton v. Driggs, 20 Wall, 125, 22 L. Ed. 299; City of Ripon v. Bittel, 30 Wis. 614; Bridge Co. v. Giesse, 38 N. J. Law, 39; Merritt v. Seaman, 6 N. Y. 168; Coon v. Railroad Co., 5 N. Y. 492-495. * * * If the objection goes to the merits, and cannot be obviated, then a general objection may suffice, because in such case the evidence cannot be made available to the party by any subsequent acts. To hold that a party may upon a trial interpose a general objection in no way pointing out the defect of which he complains, and which could be easily and speedily remedied, and then for the first time in the appellate court raise the merely technical objection that the paper offered was not sufficiently certified or authenticated or otherwise proven, would be opening the door to the grossest unfairness, and would be trifling with the administration of the law. If parties desire to avail themselves of such objections, they must make them in the trial court, with such particularity and so specifically that this court can see that such trial court has passed upon the very question presented here. No one case has been called to our attention where a contrary doctrine is sustained."

Since the decision in Pitts Agricultural Works v. Young, this court has adhered to this rule in the following cases: McCabe v. Desnoyers, 20 S. D. 581, 108 N. W. 341; State v. La Croix, 8 S. D. 369, 66 N. W. 944; Tanderup v. Hansen, 8 S. D. 375, 66 N. W. 1073; Plano v. Person, 12 S. D. 448, 81 N. W. 897; Bright v. Ecker, 9 S. D. 449, 69 N. W. 824; Harrison v. Bank, 15 S. D. 304, 89 N. W. 477; Park v. Robinson, 15 S. D. 551, 91 N. W. 344; Harvester Co. v. McKeever, 21 S. D. 91, 109 N. W. 642.

An insufficient objection, such as the one in question, would amount to and stand in the same position as no objection at all. This court has also heretofore uniformly held to the rule, in numerous decisions, that questions that should have been raised in the court below will not be considered on appeal. Johnson v. Burnside, 3 S. D. 230, 52 N. W. 1057; Lindsay v. Pettigrew, 5 S. D. 500, 59 N. W. 726; Jenkinson v. Vermillion, 3 S. D. 243, 52 N. W. 1066; De Luce v. Root, 12 S. D. 141, 80 N. W. 181; McCabe v. Desnoyers, 20 S. D. 581, 108 N. W. 341; Christainsen v. C., M. & St. P. Ry., 107 Minn. 341, 120 N. W. 300.

Whatever defects existed in the complaint by reason of its omission to specify specific acts of defendant claimed to constitute negligence were cured by the verdict and judgment, where the plaintiff, without proper or sufficient objections thereto, introduced evidence on such issue not specifically raised by the pleadings, and defendant met such evidence and introduced its evidence in rebuttal and contradiction thereof, and the issue was fully tried out before the jury after verdict and judgment, on appeal, a general allegation of negligence contained in the complaint will be sufficient, although, if proper and sufficient objections to the introduction of such evidence on the part of plaintiff had been made in the lower court the same should have been sustained. That part of the complaint charging negligence consists of three clauses, viz.: (1) "That defendant carelessly and negligently caused one of its locomotives to approach said street crossing and then and there to pass rapidly over the tracks of said railroad; (2) and carelessly and negligently omitted their duty while approaching said crossing and gave no signal by ringing the bell or sounding the steam whistle; (3) and carelessly and negligently omitted their duty and failed to keep a lookout while crossing said street, by reason whereof plaintiff was unaware of their approach." It is evident that the first clause of this complaint intended to charge negligence by commission, while the second and third clauses charge negligence by omission. The defendant was notified in advance by this first clause of the complaint that plaintiff intended to introduce evidence under this general charge of negligence by

commission. The first clause of this complaint generally charges negligence of a different class than that specified by the two succeeding clauses. This complaint was not subject to a general demurrer. If defendant was not satisfied with the sufficiency of the first clause, it was its duty to have moved to make the same more definite, or to have objected to the testimony offered by plaintiff under said first clause of the complaint, on the specific ground that the complaint was not sufficiently definite and certain to admit of testimony of that character. In legal principle the recent case of Christiansen v. C., M. & St. P. Ry., 107 Minn. 341, 120 N. W. 300, is almost identical with the case at bar. It seems to be generally held everywhere that after verdict no defects in a complaint, which might have been cured by amendment, when the complaint does state a cause of action, will be regarded on appeal, unless proper objections were made thereto in the lower court. 31 Cyc. 766; Lindsay v. Pettigrew, 6 S. D. 130, 60 N. W. 744; Seiberling v. Mortinson, 10 S. D. 644, 75 N. W. 202.

Many other assignments of error are made on the reception or rejection of evidence and other matters, all of which have been carefully examined, and we are of the opinion the same contain no error that would justify a reversal.

Finding no error in the record, the judgment of the circuit court is affirmed.