The plaintiff Richard Yeager appeals from a summary judgment for the defendants General Motors Acceptance Corporation ("GMAC") and Solomon Chevrolet Motor Company, Inc. We affirm.
The facts are undisputed. On or about May 24, 1995, Richard Yeager entered into a lease agreement with the Solomon Chevrolet dealership for the lease of an automobile. In accordance with the lease agreement, Yeager was required to pay a refundable security deposit of $350.00. The lease agreement was later assigned to GMAC. On June 27, 1996, Yeager sued, on behalf of himself and all others similarly situated, alleging that GMAC and Solomon Chevrolet had violated § 7-9-207, Ala. Code 1975, and had committed fraudulent suppression; he based the claims on the defendants' alleged failure to pay interest on the $350.00 security deposit. On September 11, 1996, Yeager amended his complaint to include claims that GMAC and Solomon Chevrolet had violated the Consumer Leasing Act by failing to disclose that it would not pay interest on the security deposit, and to ask for an equitable reformation of the lease agreement.
On April 23, 1997, the trial court entered a summary judgment for the defendants, agreeing with their contention that § 7-9-207(2)(c) did not require that the lessor of an automobile pay the lessee interest on the security deposit made under the automobile lease agreement. On May 28, 1997, Yeager appealed.
In pertinent part, the lease agreement provides, with respect to the security deposit:
 "29. SECURITY DEPOSIT. A refundable security deposit may be part of the payment you make when you sign this Lease. We will deduct from the security deposit any amounts you owe under this Lease and do not pay. After the end of this Lease, we will refund to you any part of the security deposit that is left." *Page 211 
The defendants agree that Yeager's lease agreement did not state that Yeager was granting either Solomon or GMAC a security interest in the security deposit. Moreover, they argue, the lease did not state that Yeager would be refunded the security deposit plus interest. Yeager contends that the security deposit secures payment or performance of an obligation. Thus, Yeager asserts that he obtained a security interest in the security deposit required under the lease agreement.
The issue is whether Alabama's Uniform Commercial Code, specifically § 7-9-207(2)(c), applies, that is, whether there is a security interest created in a security deposit under an automobile lease agreement that entitles the lessee to interest on the security deposit. Although this issue has been squarely addressed in several other jurisdictions, it is a matter of first impression in this state.
Section 7-9-102(1)(a), a part of Alabama's version of the Uniform Commercial Code, states that Article 9 of the U.C.C., "Secured Transaction" (§ 7-9-101 through § 7-9-507) applies "[t]o any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures." A "security interest" is defined within the U.C.C. as "an interest in personal property or fixtures which secures payment or performance of an obligation." § 7-1-201(37)a.
Yeager claims that his automobile lease is a "transaction," as that word is used in § 7-9-102(1)(a), because, he says, the security deposit made pursuant to the automobile lease agreement was money deposited to secure payment of the amounts due under the lease agreement. This claim is premised on the theory that "security deposits" are "security interests," and, therefore, are "collateral" under the U.C.C. Yeager argues that the deposits, as collateral, would be subject to § 7-9-207(2)(c), which reads:
 "The secured party may hold as additional security any increase or profits (except money) received from the collateral, but money so received, unless remitted to the debtor, shall be applied in reduction of the secured obligation."
GMAC and Solomon Chevrolet argue that when money is paid as a security deposit ownership of the money is transferred to the holder of the deposit. They further contend that Yeager retained no interest in the funds, but, instead, held a contract right to have an equivalent amount of money, or some lesser amount, returned to him at the termination of the lease. Consequently, GMAC and Solomon Chevrolet argue that the security deposit cannot be classified as "collateral" subject to the requirements of § 7-9-207(2)(c). They argue that Yeager's making a refundable security deposit created a debt, not a pledge of collateral, and that the lease agreement in no way indicated any intention on his part or on their part to create a security interest in the security deposit.
Other jurisdictions have addressed this issue, often with guidance from statutes that speak specifically to whether a security deposit for an automobile lease should be returned to the lessee with interest. The rule governing security deposits in New York appears in the New York General Obligations Law § 7-101 (as amended 1997), which changes the common-law relationship by providing that a security deposit is held by the lessor in trust for the lessee. New York General Obligations law § 7-101 (1998) reads in pertinent part:
 "(1) Whenever money shall be deposited or advanced on a contract for the use or rental of personal property as security for performance of the contract or to be applied to payments upon such contract when due, such money, with interest accruing thereon, if any, until repaid or so applied, shall continue to be the money of the person making such deposit or advance and shall be a trust fund in the possession of the person with whom such deposit or advance shall be made and shall be deposited in a bank or trust company and shall not be mingled with other funds or become an asset of such trustee. . . ."
In Illinois, the enactment of the U.C.C. had no discernible effect on the lessor's duties concerning the lessee's security interest, because Illinois had enacted a statute in 1921 governing security deposits made in regard to leases of personal property. Subsequently, the Consumer Deposit Security *Page 212 
Act of 1987, 815 Ill. Comp. Stat. 165/1-5 (West 1998), was enacted to address the specific issue of security deposits with regard to consumer transactions, and that Act replaced the 1921 statute. The Consumer Deposit Security Act of 1987 requires that the lessor either file a surety bond with the Illinois attorney general, or place the full amount of the security deposit received in an account in the name of the lessor; advise the lessee of the name and address of the institution holding the account; and clearly denote that the account is for the purpose of handling security deposits. 815 Ill. Comp. Stat. 165/3(b). Generally, if the account is an interest-bearing account, then the party entitled to the deposit at the end of the lease is entitled to all interest accrued on the deposit. Id.
If the deposit amount is less than $150, interest shall accrue to the account of the lessor. Id.
Yeager argues that because this Court does not have to address a conflicting state statute and there is no common-law precedent specifically addressing this issue, the provisions of § 7-9-207(2)(c), Ala. Code 1975, clearly control the transaction in this case. We disagree.
Yeager relies primarily on Demitropoulos v. Bank OneMilwaukee, N.A., 924 F.Supp. 894 (N.D.IU. 1996). InDemitropoulos, a federal district court in Illinois decided the case based on how it thought Wisconsin state courts would construe the applicability of the Wisconsin U.C.C. to security deposits made in regard to automobile lease agreements:
 "[F]or purposes of deciding the pending motion, the Court finds that the allegations of the complaint sufficiently allege that Bank One's lease form creates a security interest in the cash security deposits paid by lessees. Wisconsin's commercial code defines a security interest as `an interest in personal property . . . that secures payment or performance of an obligation.' Wis. Stat. § 401.201(37)(a). Personal property includes money. Id. § 990.01(27). Here, as the term `security deposit' plainly conveys, a reasonable inference may be drawn that the . . . deposit . . . was designed to secure [Demitropoulos's] obligations under the lease. Thus, the Court concludes that § 409.207(2)(c) applies to the security deposits required under the Bank One lease forms."
924 F.Supp. at 897. Furthermore, the Demitropoulos
court refers to Werbosky v. Ford Motor Credit Co., [No. 95 Civ. 1876(KTD), 1996 WL 76133, February 22, 1996] (S.D.N.Y. 1996) (not published in F.Supp.), quoting the following language from that case: "`[T]he defendant car lessor "correctly concede[d]" that the equivalent provision of the New York commercial code governed the security deposits at issue.'"Demitropoulos, 924 F.Supp. at 897.
Although the court in Demitropoulos relied on the authority of Werbosky, it did not recognize the underlying reasoning of Werbosky. Werbosky is cited primarily for its holding concerning the disclosure requirements of the Consumer Leasing Act ("C.L.A."), 15 U.S.C. § 1667a. The court's holding in Werbosky concerning the applicability of the New York U.C.C. as it relates to security deposits is narrowly premised and is limited to the fact that the parties did not argue or debate the applicability of the U.C.C. to security deposits made in regard to automobile lease agreements. The court noted that because the arguments were postured for the purpose of a motion to dismiss, all allegations in the complaint must be presumed true. In Werbosky, the defendant conceded that the New York U.C.C. governs the security deposit involved in the lease and that § 9-207 of the New York U.C.C. imposes a duty to account to the debtor for any increases or profits; however, the defendant primarily argued, to no avail, that it did not have a duty under the C.L.A. to disclose the fact that it retained the profits.
However, in this present case, GMAC and Solomon Chevrolet make no concessions as to the applicability of § 7-9-207(c)(2) in Alabama's U.C.C. Therefore, we conclude, as several other jurisdictions have concluded, that the holding inDemitropoulos is not persuasive authority. SeeWiskup v. Liberty Buick Co., 953 F.Supp. 958
(N.D.I11.1997); Steinmetz v. Toyota Motor Credit Corp.,963 F.Supp. 1294 (E.D.N.Y. 1997).
In Jester v. State, 668 So.2d 822, at 823-24
(Ala.Civ.App. 1995), the Court of Civil Appeals outlines the analysis a court must make in order to determine whether, as a matter of law, contract language shows an intention to create a security interest: *Page 213 
"`[T]he question of whether a security agreement is established calls for two independent inquiries which may be stated as follows:
 "`"The court must first resolve, as a question of law, whether the language embodied in the writing objectively indicates that the parties may have intended to create or provide for a security agreement.
 [Citations omitted.] If the language crosses this objective threshold [citations omitted], that is, if the writing evidences a possible secured transaction and thus satisfies the statute of frauds requirement, then the factfinder must inquire whether the parties actually intended to create a security interest. [Citations omitted.] Parol evidence is admissible to inform the latter [citations omitted], but not the former, inquiry."'
J. White R. Summers, Uniform Commercial Code, § 23-3 at 905 (2d ed. 1980), as quoted in In re OwensboroCanning Co., 82 B.R. 450, 453-54 (Bankr.W.D.Ky. 1988) (emphasis and brackets added by the bankruptcy court).
 "`[T]he [Uniform Commercial] Code requires "no magic words or precise form" to evidence a possible security interest. . . . Even unorthodox documents containing words such as "collateral," "pledge," . . . and "lienholder" are likely to be upheld as adequate security agreements, even when not explicitly labeled as such. . . . [T]he drafters did not intend that specific "words of grant" be required.'
 2 J. White R. Summers, Uniform Commercial Code, § 24-3 at 301-02 (3d ed. 1988). See also Matter of Hollie, 42 B.R. Ill, 117 (Bankr.M.D.Ga. 1984). . . ."
This Court utilized this analysis in General ElectricCredit Corp. v. Alford Assocs., Inc., 374 So.2d 1316
(Ala. 1979), when asked to determine whether § 7-9-207(2)(c) required the defendant lender to remit to the defendant debtor whatever profits it had earned on its reserve accounts that were specifically being held by the lender as security for a retail financing agreement between two commercial businesses. Before applying § 7-9-207(2)(c) to those reserve accounts, this Court examined the language in the agreement to determine whether that language manifested an intent to create a security interest, as required by § 7-9-102(1)(a). Alford,374 So.2d at 1322. After doing so, the Court wrote: "The intent to create a security interest in the reserve funds is specifically spelled out in the retail financing agreement, wherein it is stated, `It is agreed that such reserves are to be held as security for and not in lieu of performance.'"Id.
If no such intent is specifically expressed in the agreement, then no security interest is created. After applying the analysis articulated in Jester, we find no such intent specifically expressed in the language of the lease agreement executed between Yeager, GMAC, and Solomon Chevrolet. The language of the lease, with respect to security deposits, does not expressly and specifically indicate that the parties intended to create a security agreement.
Because we conclude that the trial court correctly held that § 7-9-207(2)(c) does not apply to security deposits made pursuant to an automobile lease agreement, we pretermit discussion of the other issues presented.
AFFIRMED.
HOOPER, C.J., and MADDOX, ALMON, SHORES, HOUSTON, KENNEDY, SEE, and LYONS, JJ., concur.