Jane DOE, Plaintiff-Appellant,

v.

GENERAL MOTORS ACCEPTANCE CORPORATION,
Defendant-Respondent.

Court of Appeals

*No. 00–1564. Oral argument April 19, 2001.—Decided
August 2, 2001.*

2001 WI App 199

(Also reported in 635 N.W.2d 7.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of and oral argument by *Ronald S. Goldser* of *Zimmerman Reed, P.L.L.P.*, Minneapolis, MN.

On behalf of the defendant-respondent, the cause was submitted on the brief of and oral argument by *Ann U. Smith* of *Michael Best & Friedrich, L.L.P.*, Madison.

Before Vergeront, P.J., Dykman and Deininger, JJ.

¶ 1. DEININGER, J. Jane Doe appeals an order dismissing her complaint against the General Motors Acceptance Corporation (GMAC) on summary judgment. She claims the trial court erred in granting GMAC's motion for summary judgment because the question of whether GMAC received "any increase or profits" from the security deposit she paid under her automobile lease was a fact question for a jury, and thus inappropriate for disposition on summary judgment. We affirm the dismissal of her action against GMAC because we conclude that Doe's lease deposit was not subject to Wis. Stat. § 409.207(2)(c) (1995–96),[1] on which her claim for damages is based.

---

[1] Doe entered into the lease in January 1995 and filed this action in 1997. All references to the Wisconsin Statutes are to the 1995–96 version unless otherwise noted.

## BACKGROUND

¶ 2. Jane Doe[2] leased a car from a dealer who assigned its interest in the lease to GMAC. GMAC had drafted the lease agreement and provided the lease contract to the local dealer. The lease called for a $200 "Refundable Security Deposit," to which the following language applied:

> SECURITY DEPOSIT A refundable security deposit may be part of the payment you make when you sign this Lease. We will deduct from the security deposit any amounts you owe under this Lease and do not pay. After the end of this Lease, we will refund to you any part of the security deposit that is left.

¶ 3. Doe filed suit, asserting that her security deposit constituted "collateral" within the meaning of Article Nine of the Uniform Commercial Code (UCC), as enacted in Wis. Stat. ch. 409, and that GMAC had improperly failed to remit or credit to her the amount of "increase or profits" it received on her security deposit, as required by Wis. Stat. § 409.207(2)(c).[3] GMAC placed the money from the security deposit into a non-interest bearing account and commingled it with other GMAC funds. Doe contends that GMAC obtained financial

---

[2] The plaintiff-appellant brought her action under a fictitious name "to avoid possible prejudice to her personally." She also asked that the matter be certified as a class action, but the trial court had not addressed the class certification issue prior to its dismissal order.

[3] Wisconsin Stat. § 409.207(2)(c) provides as follows:

> Unless otherwise agreed, when collateral is in the secured party's possession . . . [t]he secured party may hold as additional security any increase or profits (except money) received from the collateral, but money so received, unless remitted to the debtor, shall be applied in reduction of the secured obligation;

benefits from the use of the deposit in the form of reduced borrowing costs, short-term investment income, and earnings credits, and that these benefits constituted an "increase or profits" within the meaning of the statute.

¶ 4. GMAC moved for summary judgment. The trial court first concluded that "[t]he security deposit paid pursuant to the lease assigned to [GMAC] became collateral subject to a security interest under the Uniform Commercial Code as adopted in Wisconsin." The court granted GMAC's motion, however, on the grounds that "WIS. STAT. § 409.207(2)(c) does not apply in this case because [GMAC] received no 'increase' or 'profits' on [Doe]'s security deposit as those terms are used in that statutory provision." The court stated that Doe's interpretation would require the "calculation of attenuated benefits . . . which are not easily defined or calculated" and that doing so would be inconsistent with the predictability and certainty contemplated when the UCC was adopted in Wisconsin.

¶ 5. The court entered an order dismissing Doe's complaint, and she appeals.

## ANALYSIS

¶ 6. We review an order granting summary judgment de novo, applying the same standards as the trial court. *M&I First Nat'l Bank v. Episcopal Homes*, 195 Wis. 2d 485, 496, 536 N.W.2d 175 (Ct. App. 1995). "[S]ummary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id*. at 497. This appeal presents a question of statutory interpretation,

which is also a question of law which we decide de novo. *Minuteman, Inc. v. Alexander*, 147 Wis. 2d 842, 853, 434 N.W.2d 773 (1989).

■

¶ 7. Our review is de novo, and we begin with the first issue presented by the facts before us: whether the security deposit in the Doe-GMAC lease constituted collateral within the meaning of Article Nine of the UCC, WIS. STAT. ch. 409. Doe claims that because the trial court decided this question in her favor and GMAC has not cross-appealed, we may not address it. She is incorrect. A respondent may advance on appeal, and we may consider, any basis for sustaining the trial court's order or judgment. *State v. Darcy N.K.*, 218 Wis. 2d 640, 651, 581 N.W.2d 567 (Ct. App. 1998). That is, a respondent may argue, and we may conclude, that the trial court reached the right result, but for "the wrong reason." *State v. Alles*, 106 Wis. 2d 368, 392, 316 N.W.2d 378 (1982).

¶ 8. Doe argues that the security deposit she paid on her automobile lease with GMAC is governed by the provisions of WIS. STAT. ch. 409. WISCONSIN STAT. § 409.102(1)(a) provides that the chapter applies "[t]o any transaction (regardless of form) which is intended to create a security interest in personal property. . . ." "Personal property" includes money. WIS. STAT. § 990.01(27). A "security interest" is defined as "an interest in personal property or fixtures that secures payment or performance of an obligation." WIS. STAT. § 401.201(37)(a). According to Doe, that is precisely what her security deposit does—secures her payments and the performance of her obligations under the lease.

¶ 9. Were we writing on a clean slate, we might be receptive to Doe's argument that the security deposit provision in her lease agreement with GMAC was "intended to create a security interest" as provided in Wɪs. Stat. § 409.102(1)(a). The issue of UCC Article Nine's applicability to this transaction is far from one of first impression, however. Although no Wisconsin appellate court has considered the issue, courts in several other jurisdictions which have enacted the UCC have done so. We may properly look to these rulings from other jurisdictions to guide our analysis of Wɪs. Stat. § 409.207, so as to further the goal of uniformity of interpretation of the provisions of the UCC:

> The Uniform Commercial Code is a series of related uniform laws that are intended to "simplify, clarify and modernize the law governing commercial transactions." Wɪs. Stat. § 401.102(2)(a). Another goal of the code is to "make uniform the law among the various jurisdictions." Wɪs. Stat. § 401.102(2)(c). We therefore rely on precedent from this and other jurisdictions in interpreting and applying the provisions of the U.C.C.

*National Operating v. Mutual Life Ins. Co. of New York*, 2001 WI 87, ¶ 30, 244 Wis. 2d 839, 630 N.W.2d 116.

¶ 10. The Supreme Court of Alabama in *Yeager v. General Motors Acceptance Corp.*, 719 So. 2d 210 (Ala. 1998), applied a two-part test in order to determine if, as a matter of law, a security interest had been created in the context of a security deposit under an automobile lease. The court first considered "whether the language embodied in the writing objectively indicates that the parties may have intended to create or provide for a security agreement." *Id.* at 213 (citation omitted). The second part of the test inquires whether the parties actually intended to create a security interest. *Id.*

Applying the test to lease language that is identical to the security deposit provision in Doe's lease, the court determined that no security interest existed because there was "no such intent specifically expressed in the language of the lease. . . ." *Id.*

¶ 11. In another case involving nearly identical lease language, the Ohio Court of Appeals held that "a security deposit does not create a security interest ... because a conclusion to the contrary derogates from the common-law principle that a security deposit creates only a debt." *Dolan v. General Motors Acceptance Corp.*, 739 N.E.2d 848, 850 (Ohio Ct. App. 2000). The court stated that "a security deposit paid in conjunction with an automobile lease does not constitute 'collateral' ... which would require the payment of 'increase or profits' gained by the lessor during the term of the lease." *Id.* The court also noted that when the Ohio legislature "has intended to impose an obligation to pay interest on security deposits, it has done so explicitly and not in the oblique manner as the plaintiff contends was done in" the Ohio UCC counterpart to Wis. Stat. § 409.207(2)(c). *Id.*

¶ 12. Finally, the Minnesota Court of Appeals recently reached the same result in *Rosen v. PRIMUS Automotive Financial Services*, 618 N.W.2d 606, 608 (Minn. Ct. App. 2000). The court noted that the Minnesota Supreme Court had ruled that a security deposit creates a debtor-creditor relationship, thereby joining Minnesota with the " 'majority of states in defining the lessor-lessee security deposit relationship as one of debtor to creditor.' " (citing *State v. Larson*, 605 N.W.2d 706, 712 (Minn. 2000)); *see also Lawson v. Bank One Lexington, N.A.*, 35 F.Supp.2d 961, 964 (E.D. Ky. 1997) (concluding that the relationship was one of

debtor/creditor and that UCC 9–207 "does not apply to security deposits on vehicle leases.").

¶ 13. Thus, the consistent outcome on claims such as Doe's, founded on identical or very similar security deposit provisions in automobile leases, is that these lease deposits are not security interests in collateral to be governed by UCC provisions such as Wis. Stat. § 409.207. Doe points to a single case in support of her assertion that a security interest is created in a security deposit in connection with the lease of an automobile. *See Demitropoulos v. Bank One Milwaukee, N.A.*, 924 F. Supp. 894 (N.D. Ill. 1996) and 953 F. Supp. 974, 976 (N.D. Ill. 1997).[4]

¶ 14. The *Demitropoulos* court, although sitting in Illinois, endeavored to apply Wisconsin law to the dispute before it. The analysis in *Demitropoulos* is not unreasonable, but we decline to adopt it because it is not in accord with the decisions of the vast majority of courts that have considered the issue. Additionally, we note that *Demitropoulos* has been criticized or distinguished by other courts considering the issue. *See, e.g., Yeager*, 719 So. 2d at 212; *Spina v. Toyota Motor Credit Corp.*, 703 N.E.2d 484, 489 (Ill. App. Ct. 1998) ("[T]he wave of other, more recent federal decisions . . . demonstrates [that] the tide appears to have turned on plain-

---

[4] While the plaintiff in *Demitropoulos v. Bank One Milwaukee, N.A.*, 953 F. Supp. 974, (N.D. Ill. 1997) prevailed on the issue of the applicability of UCC 9–207, the court nonetheless awarded summary judgment to the defendant lessor. The court concluded, as the trial court did here, that it would not, "without legislative direction, place on lessors such an onerous burden to discern and calculate every possible benefit, no matter how small or tangential, gained from holding onto a security deposit." *See id.* at 985.

tiffs' once novel position, as adopted in ... the *Demitropoulos* decisions."). Similarly, we do not find persuasive the bankruptcy cases Doe cites in support of her position that a security interest was created, not only because of their age, but also because their context and subject matter are quite far afield from the present dispute. *See e.g., In re Atlanta Times, Inc.*, 259 F. Supp. 820, 827 (N.D. Ga. 1966), *Sanders v. National Acceptance Co.*, 383 F.2d 606 (5th Cir. 1967).

¶ 15. Doe also points, however, to other Wisconsin statutes which, according to her, require that we reach a different result on the UCC applicability issue from that reached in other states. At the time the Doe-GMAC lease was executed, WIS. STAT. § 422.417(2) provided:

> With respect to a consumer lease, except as otherwise provided in s. 429.205 with respect to a motor vehicle consumer lease, a lessor may not take a security interest in any property owned or leased by the customer other than the leased goods to secure the lessor's obligations under the lease. *This subsection does not prohibit a security interest in a cash security deposit for a consumer lease of motor vehicles or agricultural equipment.*

(Emphasis added.) According to Doe, this provision is indicative of the legislature's intent that a motor vehicle lease deposit be deemed to create a security interest. We disagree.

¶ 16. We conclude that the purpose of § 422.417 is to prevent a lessor from obtaining a security interest in a consumer's other property when he or she leases items of personal property. Doe's assertion that, by enacting an exception for cash security deposits in motor vehicle leases, the Wisconsin legislature intended to declare all security deposits in automobile leases security interests subject to the UCC, reads too much

into the statute. Rather, we conclude that the legislature simply intended to eliminate any doubt that the commercially reasonable practice of requiring a cash deposit on leased automobiles was not affected by the prohibition against liens on other types of personal property.

¶ 17. WISCONSIN STAT. ch. 429 (1999–2000) ("Motor Vehicle Consumer Leases") did not become effective until October 1, 1996, and the parties agree that the chapter does not apply to the present transaction. We note, however, that WIS. STAT. § 429.205 contains a provision similar to WIS. STAT. § 422.417(2), in that it prohibits the taking of security interests "in any real or personal property of the lessee to secure payment of any obligations assumed by the lessee under the consumer lease." Section 429.205(1) (1999–2000). As in § 422.417(2), the prohibition specifically does *not* apply to "[t]he taking of a security deposit, advance lease payment or other prepayment by cash, check, credit card or other device." Section 429.205(1)(a). Under WIS. STAT. § 429.203(9), however, a motor vehicle lessor or its assignee "is not required to pay interest on any security deposit under the consumer lease." Although not directly applicable to the transaction at hand, we take the cited provisions in ch. 429 as an indication that by excluding motor vehicle lease security deposits from the prohibition against taking extraneous security interests, the legislature does not intend to obligate lessors to pay lessees interest (or other "increase or profits") on the deposits under WIS. STAT. § 409.207.

¶ 18. Because we conclude that WIS. STAT. § 429.207 does not apply to the security deposit in Doe's lease with GMAC, it is unnecessary for us to decide whether the benefits accruing to GMAC by

virtue of its holding the deposits constituted an "increase" or "profits" under WIS. STAT. § 409.207(2)(c). Similarly, we do not address Doe's claim that the trial court improperly disregarded her expert's affidavit and damage calculations.

## CONCLUSION

¶ 19. For the reasons discussed above, we affirm the appealed order dismissing Doe's complaint on summary judgment.

*By the Court.*—Order affirmed.