# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.: 2020AP1767

Complete Title of Case:

> **DORIS BEUTTLER, JEANNE HAAS, VAR KRIKORIAN, MARJORIE SPECKHARD, TERRI STEIDL, SPECIAL ADMINISTRATOR FOR THE ESTATE OF WALTER H. STEIDL, DOLORES TORPHY, ELAINE ZLEVOR, GLORIA MURPHY AND RALPH ANDERSON,**
>
> > **PLAINTIFFS-APPELLANTS,**
>
> **NAZALY BAGDASIAN, GERI BAUMBLATT, BERNARD BRAUN, PATRICIA BRAUN, ROBERT CALLAWAY, MARSHALL CUSHMAN, MARILYN ISELIN, MARIAN KORNWOLF, IRENE MILLER, MARY MUELLER, BOB OTTUM, HOLLY OTTUM, JOYCE OTTUM, LORRAINE PAVELCIK, JOAN PETERSON, MARLENE WEICHMANN AND WOOD FAMILY 2003 TRUST,**
>
> > **PLAINTIFFS,**
>
> > **V.**
>
> **MARQUARDT MANAGEMENT SERVICES, INC.,**
>
> > **DEFENDANT-RESPONDENT.**

| | |
|---|---|
| Opinion Filed: | June 22, 2022 |
| Submitted on Briefs: | March 16, 2022 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Gundrum, P.J., Grogan and Kornblum, JJ. |
| Concurred: | |
| Dissented: | |

Appellant
ATTORNEYS:     On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Thomas Devine* of *Devine Hahn, S.C.*, Racine.

Respondent
ATTORNEYS:     On behalf of the defendant-respondent, the cause was submitted on the brief of *Monica A. Mark* of *Reinhard, Boerner Van Deuren, S.C.*, Milwaukee.

**COURT OF APPEALS
DECISION
DATED AND FILED**

**June 22, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.     2020AP1767**

**STATE OF WISCONSIN**

Cir. Ct. No.  2018CV1709

**IN COURT OF APPEALS**

---

DORIS BEUTTLER, JEANNE HAAS, VAR KRIKORIAN, MARJORIE SPECKHARD, TERRI STEIDL, SPECIAL ADMINISTRATOR FOR THE ESTATE OF WALTER H. STEIDL, DOLORES TORPHY, ELAINE ZLEVOR, GLORIA MURPHY AND RALPH ANDERSON,

    PLAINTIFFS-APPELLANTS,

NAZALY BAGDASIAN, GERI BAUMBLATT, BERNARD BRAUN, PATRICIA BRAUN, ROBERT CALLAWAY, MARSHALL CUSHMAN, MARILYN ISELIN, MARIAN KORNWOLF, IRENE MILLER, MARY MUELLER, BOB OTTUM, HOLLY OTTUM, JOYCE OTTUM, LORRAINE PAVELCIK, JOAN PETERSON, MARLENE WEICHMANN AND WOOD FAMILY 2003 TRUST,

    PLAINTIFFS,

  V.

MARQUARDT MANAGEMENT SERVICES, INC.,

    DEFENDANT-RESPONDENT.

---

APPEAL from a judgment of the circuit court for Racine County: EUGENE A. GASIORKIEWICZ, Judge. *Affirmed in part and reversed in part; cause remanded for further proceedings consistent with this opinion.*

Before Gundrum, P.J., Grogan and Kornblum, JJ.

¶1      KORNBLUM, J. The appellants (collectively referred to as the Residents) are individuals who paid a 90% refundable entrance fee to reside at The Atrium, a senior living facility managed and operated by Marquardt Management Services, Inc. The Residents appeal from the circuit court's grant of summary judgment to Marquardt. They argue that the court erred when it concluded that an element of their misrepresentation claims, reliance on the alleged misrepresentation, cannot be proved using circumstantial evidence. We conclude that circumstantial evidence may be used to prove reliance and, therefore, reverse the judgment in part and remand to the circuit court to reconsider the summary judgment decision with respect to the three residents whose affidavits contain allegations or a reasonable inference of statements by the Residents to a family member. If the circuit court determines the reliance statements alleged to have been made by Residents Gloria Murphy, Walter Steidl, and Doris Beuttler to their family members constitute admissible evidence, these three affidavits raise genuine issues of material fact sufficient to defeat summary judgment. We affirm the judgment as to the remaining Residents.

## I. BACKGROUND

¶2      The Atrium of Racine, Inc. was a nonprofit corporation that owned a senior housing campus located in Racine, Wisconsin, comprised of a seventy-six-unit elderly congregate housing facility known as The Atrium and a forty-unit assisted living facility known as Bay Pointe. The Atrium was marketed to

individuals aged seventy-five and older. In addition to monthly rent, residents of The Atrium were required to pay an entrance fee before occupying a unit. Residents were to be refunded a portion of the entrance fee within two years of terminating occupancy at The Atrium.

¶3 Prior to March of 2015, The Atrium was operated by Lincoln Lutheran of Racine, Wisconsin, Inc., which struggled financially. Lincoln Lutheran filed for receivership at the end of 2014, and Marquardt took over management of The Atrium.

¶4 As part of its efforts to make The Atrium financially sustainable, Marquardt increased the entrance fees required for certain units and created an "aggressive marketing plan." Marquardt additionally sought to alleviate concerns over the security of entrance fee payments by changing the terms of the entrance fee refund promised to prospective residents. Previously, residents were promised a refund of their entrance fee upon terminating occupancy *only* if their unit was re-rented. Under Marquardt's management, "the refund [would] be payable upon The Atrium's receipt of a new entrance fee on the residence vacated, or by no later than 24-months from the date the residence was vacated, providing a 24-month cap on the liability."

¶5 The Residents all signed contracts with The Atrium under Marquardt's management. They allege that they are individuals who each paid a 90% refundable entrance fee ranging between $84,000 and $111,500 to reside at The Atrium. Prior to entering into a residency agreement with The Atrium and paying the required entrance fee, each of the Residents met with Joe Reischl, Director of Marketing for The Atrium. With the exception of Doris Beuttler, each of the Residents was accompanied by a family member when meeting with Reischl

3

to discuss the required entrance fee. Reischl represented to each of the Residents that he or she would receive a 90% refund of the entrance fee. This representation was consistent with the marketing materials, including the brochure, which stated that the entrance fee was 90% refundable. Reischl did not disclose the financial condition of The Atrium to any of the Residents.

¶6    Despite Marquardt's efforts to turn around its financial condition, The Atrium went into receivership in May 2017. The circuit court in the receivership action entered an order declaring that all rights of the residents of The Atrium to payment of entrance fee refunds from the proceeds of the sale of the assets of The Atrium were subordinate to the rights of the Bank of New York Mellon Trust Company, trustee for bondholders of The Atrium.[1]

¶7    The Residents subsequently filed the underlying lawsuit against Marquardt alleging, as relevant for purposes of this appeal, that Marquardt

---

[1] We note that a separate appeal was taken in the receivership action. In that action, this court reversed and remanded, concluding that "the Residents' entrance fees and security deposits have priority over the interests of the Bondholders." *Casanova v. Polsky*, Nos. 2019AP1728 and 2019AP2063, unpublished slip op. ¶1 (WI App July 30, 2021). On October 18, 2021, our supreme court granted Michael S. Polsky, Esq., Receiver and The Bank of New York Mellon Trust Company, N.A.'s petition for review. That case remains pending.

In their joint petition for review in *Casanova*, the Bank of New York Mellon Trust Company and the court-appointed receiver requested that our supreme court take judicial notice of the underlying action in this case and in *Larson v. Marquardt Management Services, Inc.*, Racine County case No. 2020CV1386. The petitioners contend: "In the *La[r]son* case, The Reverend Doctor Ross Larson asserts an intentional misrepresentation claim against Marquardt and seeks compensatory and punitive damages." Information found on the Wisconsin Consolidated Court Automation Program's website, commonly referred to as "CCAP," reflects that Marquardt's motion for summary judgment in that case was denied and its subsequently filed motion to stay was granted. *See Kirk v. Credit Acceptance Corp.*, 2013 WI App 32, ¶5 n.1, 346 Wis. 2d 635, 829 N.W.2d 522 (explaining that CCAP is an online website that contains information entered by court staff of which this court may take judicial notice).

The Residents involved in this appeal do not appear to overlap with the parties in the other actions, and the parties before us have not requested a stay pending the outcome of the other matters.

misrepresented the financial condition of The Atrium and The Atrium's ability to repay the 90% entrance fee refund to induce them to enter into residency agreements and pay the required entrance fees. Marquardt moved for summary judgment arguing that it had no duty to disclose the financial condition of The Atrium to prospective residents. Marquardt also argued that summary judgment was warranted because the Residents, due to their diminished capacity or death, could not prove that they relied on any alleged misrepresentations because none of these Residents could testify that they relied on the representations.

¶8      The circuit court conducted a hearing on the motion for summary judgment. After oral argument, the circuit court determined that the agreements signed by the Residents and their payment of the entrance fees constituted "business transaction[s] between a legal entity and unsophisticated elderly individuals." The court additionally determined that the Residents were promised that 90% of the entrance fees would be repaid within two years, which was a substantial reduction in time from the previous promise made to prospective residents, possibly inferring that The Atrium was on firmer financial footing. The court noted that the entrance fees represented "large sums of money by anyone's standards" and that as a matter of public policy, Wisconsin has passed laws protecting the elderly from financial exploitation.

¶9      The circuit court found that the Residents did not have access to certain information that Marquardt had showing its true financial position. The court rejected Marquardt's argument that publicly available tax forms, called 990s,[2] would have given Residents sufficient detail that they could have gathered the

_____

[2] The Atrium, as a nonprofit organization, was statutorily required to file public tax returns, called Form 990s. These forms are publicly available to anyone who requests them. *See* 26 U.S.C. § 6104(d)(1).

information themselves. The court also found that the Residents did not have information about The Atrium's technical default on its bond obligations and "the precarious nature of the cash flow."

¶10 The circuit court held that as a party to a business transaction, pursuant to *Kaloti Enterprises, Inc. v. Kellogg Sales Co.*, 2005 WI 111, 283 Wis. 2d 555, 699 N.W.2d 205, Marquardt had a duty "to disclose to prospective residents the precarious financial posture of The Atrium, and its plan to reverse that situation." The court further concluded that it would be up to the jury "to decide if such disclosures and information available to potential residents was sufficient to decide to enter into this business relationship."

¶11 Despite finding that Marquardt had a duty to disclose its financial position and plan to reverse this, the circuit court granted summary judgment in favor of Marquardt as to the Residents' claims.[3] The court concluded that, due to their inability to testify, the Residents were unable to prove actual reliance on Marquardt's alleged misrepresentation regarding the financial stability of The Atrium. According to the court, such reliance could not "be proven circumstantially or by any exception to Wisconsin evidence statutes."

---

[3] There were more than twenty plaintiffs when this case was initiated. Only the nine Residents in this appeal had their claims dismissed on summary judgment. The other plaintiffs settled their claims.

## II. DISCUSSION

### A. *Standard of Review*

¶12    A circuit court grants summary judgment when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2) (2019-20).[4] We review de novo the circuit court's summary judgment decision, and apply the governing standards "just as the [circuit] court applied those standards." *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). In so doing, we may benefit from the circuit court's reasoning and analysis. *AccuWeb, Inc. v. Foley & Lardner*, 2008 WI 24, ¶16, 308 Wis. 2d 258, 746 N.W.2d 447. "Because this case is here on summary judgment, we recite the facts in the light most favorable to [the Residents], the part[ies] opposing summary judgment, and accept as true [the Residents'] allegations." *See United Concrete & Constr., Inc. v. Red-D-Mix Concrete, Inc.*, 2013 WI 72, ¶4, 349 Wis. 2d 587, 836 N.W.2d 807.

### B. *Duty to Disclose*

¶13    To facilitate our analysis, we have reordered the issues presented in the briefs to first determine whether Marquardt had a duty to disclose its precarious financial position. Whether a duty exists is a question of law subject to our independent review. *See Kaloti*, 283 Wis. 2d 555, ¶10.

¶14    The *Kaloti* court explained that before a defendant can be liable for misrepresentation based on the failure to disclose a material fact, the defendant must have a duty to disclose. *Id.*, ¶13. In its summary judgment briefing, Marquardt

---

[4] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

agreed with this statement of the law, stating: "A failure to disclose a material fact can, under some circumstances, support a claim for misrepresentation." "When there is a duty to disclose a fact, the law has treated the failure to disclose that fact 'as equivalent to a representation of the nonexistence of the fact.'" *Id.* (citations omitted).

¶15 The alleged misrepresentation at issue here falls squarely within *Kaloti*. The misrepresentation consists of a failure to disclose The Atrium's precarious financial position. Marquardt contends that it had no duty to disclose in this case and that, on this basis, we should affirm the circuit court's dismissal of the Residents' claims.[5] The Residents, however, assert that Marquardt's failure to disclose The Atrium's precarious financial condition before they entered into the business transactions and paid the required entrance fees amounts to an affirmative misrepresentation that The Atrium's financial issues did not exist.

¶16 In determining whether there is a legal duty and the scope of that duty, many factors come into play, including "our ideas of morals and justice ... and our social ideas as to where the loss should fall. In the end the court will decide whether there is a duty on the basis of the mores of the community." *Id.*, ¶16 (citation omitted). Regarding the mores in the commercial world, "[t]he type of interest protected by the law of misrepresentation in business transactions is the interest in formulating business judgments without being misled by others—that is, an interest

---

[5] While briefing in this matter was underway, the Residents moved to strike Marquardt's argument in this regard. The Residents asserted that if Marquardt wanted to challenge the circuit court's ruling that it had a duty to disclose, it should have filed a cross-appeal. *See* WIS. STAT. RULE 809.10(2)(b). We denied the motion and concluded that the argument was being advanced by Marquardt as a permissible alternative basis for affirming the circuit court and did not require a cross-appeal. *See Doe v. General Motors Acceptance Corp.*, 2001 WI App 199, ¶7, 247 Wis. 2d 564, 635 N.W.2d 7 ("A respondent may advance on appeal, and we may consider, any basis for sustaining the [circuit] court's order or judgment.").

in not being cheated." *Id.* (citation omitted).  The specific factors that a court must consider when determining whether a party to a business transaction has a duty to disclose a fact are as follows:

> (1) the fact is material to the transaction; (2) the party with knowledge of that fact knows that the other party is about to enter into the transaction under a mistake as to the fact; (3) the fact is peculiarly and exclusively within the knowledge of one party, and the mistaken party could not reasonably be expected to discover it; and (4) on account of the objective circumstances, the mistaken party would reasonably expect disclosure of the fact.

*Id.*, ¶20.

¶17     Marquardt argues that "*Kaloti* does not support imposing a duty to disclose in this case."  Marquardt concedes the first factor of the analysis, i.e., that the fact of its precarious financial position is material.  However, it challenges the remaining three.  According to Marquardt:  (1) it "had no reason to know that [the Residents] were about to enter into their [agreements] under the mistaken impression that [T]he Atrium was in better financial condition than it actually was, or under a mistaken impression as to whether [The Atrium] had a plan to remedy that status"; (2) "[T]he Atrium's financial condition was not 'peculiarly and exclusively' within [its] knowledge" given that The Atrium's "990s were available to the public online"; and (3) it was "not reasonable for [the Residents] to have expected a sweeping, preemptive disclosure of *all* of [T]he Atrium's financial information and its plans to improve its finances."

¶18     We start by analyzing whether Marquardt knew the Residents were about to enter into their business transactions under a mistake as to the fact of The Atrium's precarious financial position.  *See id*.  The record includes affidavits and

other evidence suggesting that Marquardt knew that The Atrium's financial position was precarious but the Residents themselves did not.

¶19    The CEO of Marquardt, Matthew Mauthe, acknowledged during his deposition that he had received information showing that The Atrium was in a bad financial situation when Marquardt undertook management of it around 2015. Mauthe testified that he received a 2015 audit report for the 2014 fiscal year, which was prepared by an independent auditor. That report had an item called "Emphasis of Matter," which stated that The Atrium "has incurred losses and has a net deficit that raise substantial doubt about its ability to continue as a going concern."[6] Subsequent audits contained the same Emphasis of Matter.

¶20    In an effort to alleviate concerns over the security of entrance fee payments, Mauthe stated that the terms of the agreement that the Residents signed were changed to guarantee repayment of the entrance fee within two years of termination of occupancy to instill a sense of certainty in prospective purchasers that the money would be repaid. Rather than converting from an entrance fee model to a rental model, per the consultant H2 Healthcare, LLC's recommendation, Marquardt increased entrance fees charged for various units. Marquardt also put into place an "aggressive marketing plan" to "test[] the market to determine whether or not an entrance fee model will work."

¶21    Marquardt did not disclose its financial position to the Residents and did not disclose that it had changed its marketing plan to attempt to address its precarious financial position. The Residents knew only that they were promised a

---

[6] Marquardt's counsel explained to the circuit court that "substantial doubt about [an entity's] ability to continue as a going concern" exists "when conditions and events, considered in the aggregate, indicate that it is probable that the entity will be unable to meet its obligations as they become due within one year after the date that the financial statements are issued."

90% refund of their entrance fees within two years of vacating their units. Marquardt agreed that it had made a promise to the Residents that they would receive a 90% refund. During the motion hearing, the circuit court expressed concern that "from every analysis," Marquardt was making the promise to the Residents that they would get their money back while simultaneously "sitting on a failing institution." The second factor supports imposing a duty to disclose.

¶22 We additionally conclude that the fact of The Atrium's precarious financial position and the plan to remedy that status was peculiarly and exclusively within Marquardt's knowledge. Marquardt conceded that it did not provide all of the information available as to its precarious financial position. Marquardt nevertheless contends that disclosure was unnecessary because the 990s were available to prospective Residents, which according to Marquardt had all of the information necessary to understand The Atrium's financial condition. We disagree.

¶23 As the circuit court explained, the 990s lacked the details that were available in the financial statements of The Atrium and were insufficient to reveal the precarious financial situation. For instance, the circuit court noted that the 990s did not reveal The Atrium's technical default on bond payment requirements or the precarious nature of The Atrium's cash flow. We have independently reviewed the 990s that are in the record and agree with the circuit court's assessment. Contrary to Marquardt's assertion that the H2 report and the audit reports were cumulative to the financial information that was publicly available to the Residents, we conclude that The Atrium's precarious financial position and the plan to remedy that status were peculiarly and exclusively within Marquardt's knowledge. The third factor supports imposing a duty to disclose. *See id.*, ¶19 (noting that courts tend to conclude that a duty to disclose exists "*where the defendant has special knowledge*

11

*or means of knowledge not open to the plaintiff* and is aware that the plaintiff is acting under a misapprehension as to facts which could be of importance to him, and would probably affect his decision") (citation omitted).

¶24 We turn to the fourth factor, which is whether, on account of the objective circumstances, the Residents would reasonably expect disclosure of The Atrium's precarious financial position and the plan to remedy that status. During the summary judgment motion hearing, the Residents asserted that as investors to a business transaction, they would have expected disclosure before investing their life savings. Specifically, the Residents argued they would have reasonably expected to know that Marquardt had "substantial doubt" as to The Atrium's ability to continue as a going concern. We agree, particularly in light of this State's strong public policy interest in protecting older adults, which is reflected in legislation. *See generally* WIS. STAT. § 46.90 (pertaining to Wisconsin's elder abuse mandatory reporting and investigation system). We conclude that it was reasonable for the Residents to expect disclosure of the risks associated with the underlying business transactions. ***Kaloti*** supports the imposition of a duty to disclose, and we agree with

the circuit court's ruling that Marquardt had a duty to disclose that it was in a precarious financial state.[7]

## C. *Availability of Circumstantial Evidence to Prove Reliance*

¶25 Our conclusion that Marquardt had a duty to disclose the information relating to its precarious financial position does not end our inquiry. *See **Ollerman v. O'Rourke Co. Inc.***, 94 Wis. 2d 17, 26-27, 288 N.W.2d 95 (1980) (explaining that if there is a duty to disclose, the defendant incurs tort liability for misrepresentation, i.e., the representation of the nonexistence of the fact, if the elements of the tort of misrepresentation are proved). A claim for misrepresentation requires proof of reliance on the misrepresentation. *Id.* at 43. The circuit court granted summary judgment to Marquardt after concluding that due to their inability to testify, the Residents were unable to prove actual reliance on Marquardt's alleged misrepresentation regarding the financial stability of The Atrium.

---

[7] Marquardt argued that ***Bellon v. Ripon College***, 2005 WI App 29, 278 Wis. 2d 790, 693 N.W.2d 330, applies. In that case, we concluded that all of the information that Ripon College relayed to an associate professor was true at the time of her interview when the alleged misrepresentations occurred. *Id.*, ¶9. To the extent the professor argued that Ripon had a duty to say more, we held that she sought "to impose a duty on Ripon to supply predictions, not facts." *Id.*, ¶10. The record in that case demonstrated that the professor's "teaching position, along with others, was eliminated due to unforeseen economic circumstances." *Id.* We concluded that "Ripon had no duty to predict future economic realities." *Id.* ***Bellon*** does not apply here because it is distinguishable. Despite Marquardt's efforts to frame the argument as its failure to predict the future, the Residents are not seeking to hold Marquardt to an "amorphous, unbounded duty" to disclose endless financial context. They sought actual information as to The Atrium's financial condition and its plan to remedy that status as of the times they signed their agreements—information that was readily available to Marquardt. The promise to refund 90% of the entry fee was not an amorphous hope, but a specific promise with a time limit—within two years after the Resident vacated.

¶26     Both parties agree that the Residents' misrepresentation claims require proof of actual reliance.[8]  *See* ***Malzewski v. Rapkin***, 2006 WI App 183, ¶¶17-20, 296 Wis. 2d 98, 723 N.W.2d 156 (providing that all common law misrepresentation claims include as an element that the plaintiff believed the defendant's misrepresentation was true and actually relied on it); *see also* WIS JI—CIVIL 2401, 2402, & 2403.  The jury instructions explain:

> In determining whether [plaintiff] actually relied upon the representation, the test is whether [(he) (she)] would have acted in the absence of the representation.  It is not necessary that you find that such reliance was the sole and only motive inducing [(him) (her)] to enter into the transaction.  If the representation was relied upon and constitute[s] a material inducement, that is sufficient.

WIS JI—CIVIL 2401, 2402, & 2403 (underlining and footnotes omitted).[9]

¶27     Because the Residents have the burden of proof in connection with their misrepresentation claims, to overcome summary judgment, the Residents must show that there is a genuine issue of material fact as to their actual reliance on Marquardt's misrepresentation regarding The Atrium's financial condition.  *See* ***Techworks, LLC v. Wille***, 2009 WI App 101, ¶2, 318 Wis. 2d 488, 770 N.W.2d

---

[8] Throughout their briefing, the Residents refer to their claims as common law misrepresentation claims.  Common law misrepresentation encompasses three categories of claims: (1) intentional; (2) negligent; and (3) strict liability misrepresentation.  ***Kaloti Enters., Inc. v. Kellogg Sales Co.***, 2005 WI 111, ¶12, 283 Wis. 2d 555, 699 N.W.2d 205.  The Residents avoid committing to one category.  They argue that whether a claim for strict liability misrepresentation or negligent misrepresentation can arise from a failure to disclose remains an open question.  *See id.*, ¶13 n.3.

Marquardt, however, contends that the only claim at issue is the Residents' claim for intentional misrepresentation arising from the failure to disclose.  We need not resolve this question to resolve this appeal.  *See* ***Water Well Sols. Serv. Grp. Inc. v. Consolidated Ins. Co.***, 2016 WI 54, ¶33 n.18, 369 Wis. 2d 607, 881 N.W.2d 285 ("We decide cases on the narrowest grounds possible.").

[9] WIS JI—CIVIL 2401 uses (plaintiff) throughout rather than (he)(she) and (him)(her).  WIS JI—CIVIL 2402 and 2403 use (he)(she) and (him)(her).

727. The circuit court determined that the Residents could not meet this burden because none of the Residents could provide direct testimony because they were either incapacitated or deceased. The court based its conclusion on its mistaken legal conclusion that only direct testimony, not circumstantial evidence, could prove reliance.

¶28 Wisconsin law does not require direct evidence to prove elements of every cause of action. "It is not necessary that every fact be proved directly by a witness or an exhibit. A fact may be proved indirectly by circumstantial evidence. Circumstantial evidence is evidence from which a jury may logically find other facts according to common knowledge and experience." WIS JI—CIVIL 230; *see also Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶3, 241 Wis. 2d 804, 623 N.W.2d 751 (explaining that circumstantial evidence "is evidence of one fact from which the existence of the fact to be determined may reasonably be inferred"). The circuit court has considerable latitude to admit circumstantial evidence. *Oseman v. State*, 32 Wis. 2d 523, 527, 145 N.W.2d 766 (1966). Wisconsin law also is well established that circumstantial evidence is available to meet the burden of proof even on summary judgment. "That burden can be met by reasonable inferences drawn from circumstantial evidence." *Techworks*, 318 Wis. 2d 488, ¶2.

¶29 Nothing in the case law prohibits using circumstantial evidence to prove misrepresentation, contrary to the circuit court's conclusion. Wisconsin cases dating back to 1891 show that the courts have admitted circumstantial evidence to prove fraud without excepting the reliance element. *See, e.g.*, *Weadock v. Kennedy*, 80 Wis. 449, 451, 50 N.W. 393 (1891); *Goodell v. Poller*, 204 Wis. 127, 130, 235 N.W. 542 (1931). We conclude that the circuit court erred as a matter of law in determining that the Residents could not use circumstantial evidence to prove reliance.

¶30    When the circuit court determined reliance could not be proven through circumstantial evidence, it granted Marquardt's motion for summary judgment because the Residents failed to submit any direct evidence opposing the motion.  Because the law permits the Residents to establish the reliance element with circumstantial evidence, we reviewed the materials filed in opposition to summary judgment to see whether the Residents' submissions contain any such evidence that raises a genuine issue of material fact as to reliance.  We conclude that three of the affidavits—Beuttler, Steidl, and Murphy—contain allegations or a reasonable inference of conversations the affiant had with the Resident that, if admissible, would constitute sufficient circumstantial evidence to defeat summary judgment.

¶31    Although all of the Residents except Beuttler had a family member accompanying them to the meetings with Reischl in which they discussed the entrance fee required to reside at The Atrium and the right to a refund within two years of terminating occupancy, attendance at the meeting is not sufficient to raise a material issue of fact.  As the Residents note in their brief, the family members would need to be able to testify both about the "representations made … regarding The Atrium's financial condition, and each [Resident's] reliance thereon when deciding to enter into the transaction and pay the 'refundable' entrance fee."

¶32    Marquardt correctly contends that the affidavits must show that the Residents relied on the omission that forms the *core* of the Residents' misrepresentation claims; namely, Reischl's silence as to The Atrium's financial condition.  Additionally, Marquardt contends that the affidavits are inadmissible because the family members do not have personal knowledge of the Residents' thoughts and motivations.  *See* WIS. STAT. § 802.08(3) (Affidavits in support of and opposition to a motion for summary judgment must "be made on personal

knowledge" and "set forth such evidentiary facts as would be admissible in evidence.").

¶33 Our careful review of all of the affidavits and interrogatories shows that if the circuit court determines on remand that the statements in the affidavits would be admissible at trial pursuant to the rules of evidence, averments in support of the claims of Murphy, Beuttler, and Steidl create a genuine issue of material fact as to the Residents' actual reliance. The affidavits submitted on behalf of these residents indicate that the affiants had personal knowledge based on conversations with the Resident and could testify about the source of their personal knowledge that the Resident relied on the promise of the entrance fee being 90% refundable. Gloria Murphy's daughter, Lauren Payne, attested that her parents[10] were concerned about paying the entrance fee and that her mother stated to her that "she believed, based upon [Reischl's] representations, that she was making a good investment by paying the Entrance Fee required to reside at The Atrium." Doris Beuttler's son, Fred Beuttler, attested that "Doris E. Beuttler stated to me that she decided to pay the Entrance Fee required to reside at The Atrium because Joe Reischl represented that she would receive a refund of 90%." Walter Steidl's daughter, Terri Steidl, attested to both the representations made by Reischl to Walter Steidl as to The Atrium's financial stability and her father choosing The Atrium over another residence because of the promised 90% refund of the entrance fee, specifically averring that her father "liked that he would be able to leave the refunded portion of the Entrance Fee to his family when he passed away, rather than spending the money on increased rent at Primrose."

---

[10] Both of Lauren Payne's parents were signatories to the contract. According to the Affidavit, her father is now deceased and only Gloria Murphy is listed as a plaintiff.

¶34 The affidavits on behalf of the other residents make more general statements about reliance but do not lay a sufficient foundation as to show a genuine issue of material fact. Key on this point is that the affiants do not indicate that they had a conversation with the Resident in which they discussed reliance or even heard the Resident specifically discuss the refundability question. Some of the affiants merely attest that they would have advised their loved one not to pay the entrance fee had they known about The Atrium's precarious financial position or otherwise speculate about why the Resident might have paid the entrance fee.[11] Others expressed an opinion about why the Resident paid the entrance fee but did not give a foundation for their knowledge.[12] We are not looking for magic words, but for a foundation for admissible evidence based on the affiants' personal knowledge. No doubt if the affiants possessed personal knowledge of the Residents' intentions the affidavits would have clearly reflected that knowledge. Because the affidavits/interrogatories with respect to the remaining six Residents did not contain any assertions or reasonable inferences that the affiant possesses personal knowledge about which they can testify about the Resident's reliance, the circuit court correctly granted summary judgment on the claims of Residents Jeanne Haas, Delores Torphy, Elaine Zlevor, Ralph Anderson, Var Krikorian, and Marjorie Speckhard. We affirm the judgment as to these six Residents.

---

[11] Affidavit of David Haluska on behalf of Resident Jeanne Haas; Affidavit of Kathleen McMahon on behalf of Resident Delores Torphy; Interrogatories of Estate of Elaine Zlevor; Interrogatories of Estate of Ralph Anderson.

[12] Affidavit of Dan Bagdasarian on behalf of Resident Var Krikorian; Affidavit of Sandy Gage on behalf of Resident Marjorie Speckhard.

## III. CONCLUSION

¶35 In conclusion, while the Residents' evidence submitted was circumstantial, if deemed admissible under the rules of evidence, the submissions on behalf of Murphy, Steidl, and Beuttler are sufficient to defeat Marquardt's motion for summary judgment on the issue of reliance. For these three Residents, the signing of residency agreements and payment of entrance fees, together with the affidavits of their family members regarding representations made by The Atrium and indications given by Murphy, Steidl, and Beuttler as to their reliance on those representations, if determined upon remand to be admissible, create a genuine issue of material fact for trial. Accordingly, we reverse the circuit court's judgment as to Murphy, Beuttler and Steidl, and remand for further proceedings consistent with this opinion, including the circuit court reconsidering the summary judgment decision with respect to these three Residents in light of this decision. We affirm the circuit court's judgment as to the remainder of the Residents, as their affidavits and interrogatories are insufficient to defeat Marquardt's motion for summary judgment as to reliance.

*By the Court.*—Judgment affirmed in part and reversed in part; cause remanded for further proceedings consistent with this opinion.